# United States Court of Appeals
## For the First Circuit

---

Nos. 00-1756, 00-1757, 00-1758

MCLANE, GRAF, RAULERSON & MIDDLETON, P.A.

Plaintiff, Appellee/Cross-Appellant,

v.

ALFRED RECHBERGER; ARC PARTNERS, LTD.,

Defendants, Third-Party Plaintiffs, Appellants/Cross-Appellees,

v.

EDWARD L. HAHN; JON MEYER
Third-Party Defendants, Appellees.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph DiClerico, Jr., U.S. District Judge

---

Before

Selya and Lipez, Circuit Judges,
and Doumar,* Senior District Judge.

---

Valeriano Diviacchi on brief for appellant Alfred Rechberger.
Douglas L. Ingersoll and Ingersoll & Sullivan, P.A. on brief for appellant ARC Partners, Ltd.
Peter G. Beeson and Devine, Milliment & Branch, P.A. on brief for appellee Jon Meyer.
James C. Wheat, Jennifer L. Murphy, Todd J. Hathaway, and Wadleigh, Starr & Peters, P.L.L.C. on brief for appellees McLane, Graf, Raulerson, & Middleton and Edward A. Hahn.

_____
      *Of the Eastern District of Virginia, sitting by designation.

**LIPEZ, Circuit Judge**. These appeals arise from protracted litigation over attorney's fees allegedly owed by Alfred Rechberger ("Rechberger") and ARC Partners, Ltd. ("ARC") to the New Hampshire law firm McLane, Graf, Raulerson, & Middleton, P.A. ("McLane"). Rechberger focuses on three rulings against him. First, he challenges the district court's partial summary judgment award of $135,157.77 to McLane on its contract claim because he believes that an attorney's allegedly erroneous initial valuation of the damages exposure from the case for which the attorney was retained should relieve him from liability for all fees generated by the matter. Second, he challenges the jury award to McLane of $39,567.50 in fees, claiming that he lost because the district court construed the surviving count of his third-party complaint and counterclaim too narrowly. Finally, he challenges the district court's summary judgment ruling against him on his third-party complaint against an attorney, Jon Meyer ("Meyer"), who handled the litigation at issue before McLane did. In its appeal, ARC challenges the district court's refusal to amend, alter, vacate or clarify the judgment entered jointly against it and Rechberger for attorney's fees.

In a cross-appeal, McLane seeks reversal of the district court's decision not to sanction Rechberger with an additional award of attorney's fees and expenses for allegedly frivolous and vexatious litigation. McLane also challenges the district court's decision to

grant ARC judgment as a matter of law with respect to the $39,527.03 of fees still in dispute at the time of trial.

On this last point raised in the McLane cross-appeal, we must vacate the judgment for ARC. In all other respects, we affirm.

## I. Background

McLane sued Rechberger and ARC for unpaid attorney's fees in the New Hampshire Superior Court on July 7, 1997.[1] On July 11, 1997, a Superior Court justice granted McLane's petition for an attachment of $300,000 held by Rechberger and ARC.[2] Rechberger removed the case from state to federal court on August 13, 1997, and filed an answer on

---

[1] ARC is a limited partnership; its general partner is Alfred Rechberger, and its limited partner is ARC Trust. Beneficiaries of the trust include Mr. Rechberger's children. Despite the voluminous record generated by this litigation, it contains little information on the exact status and nature of ARC. At trial, an attorney at McLane (Wilbur Glahn) described ARC as a "Colorado limited partnership with a general partner formed on the Isle of Man off the coast of England . . . [designed to] bulletproof Mr. Rechberger's assets." In an attachment proceeding, a New Hampshire Superior Court justice declared Rechberger and ARC indistinguishable for purposes of the litigation underlying this fee dispute. To simplify the discussion, we refer to both Rechberger and ARC as "Rechberger" below, unless otherwise noted. ARC adopts by reference many of the arguments made by Rechberger on appeal.

[2] Rechberger, ARC, and McLane dispute the ownership of the $300,000, which was placed in an escrow account by a company (Bio-San) sued by Rechberger and ARC during the pendency of that litigation. The $300,000 became available as a result of a settlement of the Bio-San lawsuit--one of the legal disputes in which McLane represented Rechberger. Rechberger and ARC now say the money belongs to ARC; McLane asserts it is the joint possession of Rechberger and ARC. Neither party briefed this question on appeal and we do not address it.

-4-

September 2, 1997.  Rechberger also countersued McLane and filed a third-party complaint against attorneys Jon Meyer and Edward L. Hahn for 1) malpractice, 2) infliction of emotional distress, and 3) breach of an implied covenant to charge fair and reasonable fees.  In order to understand this bitter dispute over attorney's fees, we must regrettably review the litigation which generated the fees and the tortuous course of this case to its present state.

A. The Underlying Litigation

In late 1994, Marion Jacobi, the daughter of Alfred Rechberger, filed suit against her father, alleging that he had sexually assaulted her on several occasions from 1979 to 1985.  See Jacobi v. Rechberger, et al., No. 94-C-82 (N.H. Super. Ct. filed 1994) ("Jacobi").  Jacobi sued both her father and ARC, which she alleged was merely the alter ego of Rechberger.  She also sued Bio-San Laboratories, Inc. ("Bio-San"), a company at which she had worked when it was owned by Rechberger, alleging that he sexually assaulted her there, and that the company was liable for assaults on its premises.  Although Rechberger sold the company in 1990, he was still receiving payments from it pursuant to a stock purchase agreement.

Rechberger retained attorney Edward L. Hahn in March 1995 to handle the defense of the Jacobi lawsuit.  Hahn allegedly advised Rechberger that his daughter's suit was a "$50,000 case" and that litigation costs for his defense would be "around $200,000."  Attorney

Hahn worked on the matter, first alone as a member of Hahn & Associates, later with Jon Meyer when he joined Meyer's law firm, Backus, Meyer, Solomon, Rood & Branch, P.A. ("Backus"), in June 1995, and finally with attorneys at McLane, which he joined in March, 1996.

The Jacobi litigation spawned another legal dispute. In June, 1995, Hahn filed suit on behalf of Rechberger and ARC against Bio-San. Rechberger et al. v. Bio-San Laboratories, Inc., No. 96-44-JD (D.N.H. filed 1996). Rechberger had owned several vitamin pill businesses purchased by Bio-San in 1990. The stock-purchase agreement provided for Bio-San to pay Rechberger certain moneys, but Bio-San stopped these payments in 1995. Bio-San gave several reasons for stopping the payments, including Marion Jacobi's suit against Bio-San. Bio-San averred that Rechberger's failure to disclose the alleged abuse in connection with the sale of the business amounted to a violation of the stock purchase agreement, which required the seller to disclose all significant liabilities of the purchased entity.

Hahn worked on the Bio-San and Jacobi litigation, and more general corporate matters for Rechberger at his own firm, at Backus, and at McLane. Both Backus and McLane assigned other attorneys to work with Hahn. Rechberger paid nearly all of the fees billed by Hahn, Backus, and McLane before January 1997.

Jacobi's suit against Rechberger settled in May 1997 when he agreed to pay her $1.35 million. Rechberger's suit against Bio-San was

-6-

settled in arbitration in July 1997 when Bio-San agreed to pay Rechberger $1.85 million.  At the conclusion of this litigation, Rechberger had incurred approximately $849,000 in legal fees, and had paid approximately $625,000.  About $191,000 of McLane's unpaid bills stemmed from the Jacobi litigation (which Hahn, Wilbur Glahn, and other McLane attorneys had worked on), and about $28,000 stemmed from general corporate work which Hahn did for Rechberger.  The Backus firm claimed $4,000 from the Jacobi litigation.

## B. The McLane-Rechberger Litigation

When Rechberger stopped paying fees to McLane in January 1997, McLane attorneys repeatedly requested payment.  Rechberger initially gave no reason for not paying.  At the subsequent trial, one partner testified that Rechberger first claimed that he was not paying simply because of a "cash flow problem."  Losing all patience, McLane filed suit against Rechberger in the summer of 1997 in the New Hampshire Superior Court.  After removing the case to the United States District Court for the District of New Hampshire on the basis of diversity of citizenship, Rechberger filed an answer to McLane's suit, a counterclaim, and a third-party complaint against attorneys Meyer and Hahn.  In his counterclaim and third-party complaint, he alleged malpractice, infliction of emotional distress, and breach of an implied covenant to charge fair and reasonable fees.  Subsequently, the district court granted the motions of McLane, Meyer, and Hahn for

summary judgment on the malpractice and emotional distress counts when Rechberger failed to oppose these motions.

In the surviving count of his counterclaim, Rechberger asserted that McLane charged unfair and unreasonable fees for the services it provided. McLane filed a motion for partial summary judgment on this remaining count and on its own claim for fees, noting that Rechberger admitted in his answer that McLane did legal work for him and ARC and that he agreed to pay reasonable fees for those services. McLane averred that Rechberger provided no factual basis for disputing the validity of a number of his debts to the firm. McLane also argued that Rechberger's own expert witness (Finis Williams) did not find the fees charged by McLane attorney Wilbur Glahn unreasonable, and did not evaluate the fees of McLane associate Mark Whitney. Williams's report also did not challenge expenses incurred by the McLane firm.

In response, Rechberger claimed that there was no written fee agreement. He asserted that Hahn's allegedly erroneous valuation of his exposure in the Jacobi case made Rechberger immune from liability for all subsequent fees and expenses. Finding this and other arguments unconvincing, the district court granted McLane partial summary judgment on its contract claim and Rechberger's counterclaim, thereby

awarding McLane nearly all the fees and expenses it requested on

partial summary judgment.  These fees and expenses included:[3]

> 1. Bio-San fees: $316.97
> 2. Corporate expenses: $1,254.21
> 3. Corporate fees: $27,303.00
> 4. Jacobi expenses: $27,185.09
> 5. Jacobi fees generated by Wilbur Glahn and Mark Whitney: $79,050.08[4]

At this point in the case (late April of 1999), a substantial

portion of the fees and expenses claimed by McLane had been adjudged

proper and due to McLane.  McLane asked the district court to sanction

Rechberger's counsel, Valeriano Diviacchi, for disputing these fees

despite his alleged awareness that he had no grounds for doing so.

Crediting a brief submitted by Diviacchi which explained his litigation

tactics, the district court declined to impose any sanctions.

As the trial approached on the remaining $83,755.03 of fees in

dispute, the parties sought to clarify the types of evidence which

Rechberger could present on his third-party complaint against Hahn and

his counterclaim against McLane.  Seeking to prove that Hahn and McLane

had breached an implied covenant to charge fair and reasonable fees,

---

[3] For a complete list of all the monetary judgments entered in the case, see the appendix to this opinion.

[4] The district court directed the parties to agree on the amount due for this Jacobi work because the court could not make that determination on the basis of the documents before it.  McLane submitted a statement assessing Glahn's and Whitney's outstanding fees at $79,098.50, and Rechberger did not file any response with the court. The district court adopted McLane's estimate.

-9-

Rechberger disclosed his plan to introduce evidence of Hahn's negligence in handling the <u>Jacobi</u> case. After the district court expressed some doubts about the propriety of this strategy, Rechberger asked the district court to construe the surviving count of his counterclaim against McLane and his third-party complaint against Hahn, which challenged the fairness and reasonableness of their fees, to include a claim that the attorneys had failed to provide representation with the skill and knowledge of an average attorney.

The district court denied this request. In its view, such an interpretation of the surviving count would be tantamount to a reinstatement of the first count of Rechberger's original complaint alleging legal malpractice. Moreover, such reinstatement would severely prejudice "the third-party defendants in light of the history of this case and Rechberger's previous acquiescence in the dismissal of his attorney malpractice claim." Therefore, the court did not allow Rechberger to allege at trial "claims for negligent performance of legal services . . . [or] challenges to the fees based on the lawyers' alleged failure to properly assess the <u>Jacobi</u> case, to settle at an earlier time, or to keep Rechberger informed about the case." Rather, the district court only allowed Rechberger to challenge "the nature (but not the quality) of the work performed;" for example, to challenge "an hourly rate as unreasonably high based on the level of skill of the

lawyer who did the work or the nature (but not the quality) of the work performed."

In another pre-trial development, Rechberger dismissed his previous expert, Finis Williams, and retained a new expert, Richard Foley, to assess the reasonableness of the attorney's fees still at issue. Foley submitted a report to the district court and was deposed by McLane. McLane then asked the court to exclude Foley's testimony on the grounds that it did not meet the standards for expert testimony prescribed by the Supreme Court in <u>Daubert</u> v. <u>Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993). After conducting a hearing, the district court permitted Foley to testify. However, the court did grant McLane's motion in limine to exclude evidence regarding certain fees left uncontested by Foley. In this motion, McLane showed that Foley only challenged the reasonableness of $39,527.00 in fees incurred for the time of Attorney Hahn and $23,562.00 in fees incurred by McLane between February 7 and February 28, 1997. Subtracting the $63,089.00 in fees disputed by Foley from the $83,755.00 still in dispute, McLane demonstrated that $20,666.00 in fees were left undisputed. The district court's final pre-trial order directed "counsel [for Rechberger] to file a stipulation with respect to" those fees. Rechberger complied.

The trial began on February 2, 2000 and lasted two days. At the completion of the presentation of evidence, the district court granted

McLane judgment as a matter of law with respect to $23,562.00 of fees incurred from February 2 to February 28, 1997. Although Foley's report had challenged these fees, that aspect of his report was discredited at trial. Foley had opined that since Rechberger had instructed Glahn, a McLane attorney, to settle the Jacobi case in early February 1997, fees incurred in that month were unreasonable. At trial, however, Foley admitted that he had never discussed this settlement issue with Rechberger. Rechberger himself failed to appear at trial, and Glahn testified that Rechberger did not instruct him to settle the case in early February. Finding that Rechberger and ARC had offered no evidence to dispute that $23,562.00 in fees, the court entered a judgment for this amount in favor of McLane against both Rechberger and ARC. Finding that McLane had offered no evidence to demonstrate the liability of ARC for the remaining $39,527.03 in dispute, the court also entered judgment as a matter of law for ARC with respect to this claim. The court did permit the jury to determine whether Rechberger owed that money to McLane. The jury ruled that he did, thus deciding in favor of McLane on the balance of its contract claim and in favor of Hahn on Rechberger's third-party complaint.

After trial, McLane attempted to recover the legal fees it spent suing Rechberger and defending against his counterclaim by filing a "Claim for a Judgment with Respect to Count III of its Writ for Bad Faith." At the outset of the litigation, McLane had sued Rechberger

not only for the debts he owed (Counts I and II), but also for "bad faith refusal to pay a valid debt" (Count III). McLane alleged that Rechberger and his counsel acted in bad faith throughout the litigation. Its pre-trial motion for attorney's fees and expenses incurred preparing its summary judgment motion had been based on a federal statute (28 U.S.C. § 1927); its post-trial motion was predicated on New Hampshire law and the district court's inherent powers to sanction litigants. Although the district court found the conduct of Rechberger's case troubling, it did not sanction Rechberger or his counsel.

C. Rechberger's Litigation with Jon Meyer

Rechberger hired Hahn in April 1995, and continued to use him when he moved to the Backus firm, where he was supervised by Meyer. Suing Meyer for breach of an implied covenant to charge fair and reasonable fees, Rechberger alleged that Meyer was personally responsible for Backus's alleged overbilling from June 1995 to March 1996 because Meyer, the supervising attorney, had Hahn do work which a less senior (and thus less well-paid) attorney could have done. In response to Rechberger's third-party complaint against him, Meyer filed a motion for summary judgment, arguing that Rechberger should be suing Meyer's firm (Backus), not Meyer himself. The district court agreed, granting

summary judgment for Meyer on Rechberger's third-party complaint.[5]

Perhaps anticipating this result, Rechberger had sought leave of the

court to amend his third-party complaint to support his allegations of

Meyer's vicarious liability.  The district court denied this motion on

the ground of timeliness.

## D. The Issues on Appeal and Cross-Appeal

As a result of these proceedings and the subsequent appeals and

cross-appeals, we must address the following: Rechberger's appeal of

the partial summary judgment entered for McLane prior to the trial

(Part II); Rechberger's appeal of the judgment as a matter of law

awarded to McLane at trial and the jury verdict for McLane at trial

(Part III); Rechberger's appeal of the summary judgment granted to Jon

Meyer (Part IV); ARC's appeal relating to the liability of ARC for the

judgments entered against it and Rechberger, and McLane's cross-appeal

of the district court's entry of judgment as a matter of law for ARC

with respect to the fees awarded by the jury to McLane (Part V); and

McLane's cross-appeal from the denial of its claims for attorney's fees

as a sanction (Part VI).  We turn to these tasks.

---

[5] After Rechberger sued him, Meyer filed a third-party
counterclaim against Rechberger for $5,000 in unpaid bills and for
legal fees generated in order to defend against Rechberger's allegedly
frivolous breach of contract claim.  A May 27, 1999 order granted a
motion for partial summary judgment in favor of Meyer on the
counterclaim against ARC and Rechberger in the amount of $3,396.40.  On
January 6, 2000, all parties stipulated to cease litigating the
"remaining disputed portion of Third Party Defendant Meyer's
counterclaim."

## II. The Partial Summary Judgment for McLane

Focusing on what it termed the "undisputed fees," McLane moved for partial summary judgment on two counts of its complaint against Rechberger: breach of contract and quantum meruit. In order to rule for McLane on its contract claim (a ruling that would make the quantum meruit claim superfluous), the district court first had to find, beyond any genuine issue of material fact, that there was a contract between McLane and Rechberger, and that McLane had performed according to its terms. The district court did so. Although there was no written fee agreement, "[a]n agreement that is not reduced to writing may be based on the parties' oral agreement or on their conduct." McLane, Graf, Raulerson & Middleton, P.A. v. Rechberger, No. CIV. 97-398-JD, 1999 WL 813952, at *6 (D.N.H. Apr. 29, 1999) (citing Goodwin R.R., Inc. v. New Hampshire, 517 A.2d 823, 829-830 (N.H. 1986)).[6] Given that Rechberger had paid McLane's bills through December of 1996, the district court ruled that "an unwritten agreement existed through which [Rechberger] received legal services from the McLane firm and agreed to pay for those services, to the extent the fees were reasonable." Id. It then

___

[6] The district court did not consider the statute of frauds issues raised by the unwritten contract, reasoning as follows: "Although the defendants (Rechberger and ARC) raised the statute of frauds as an affirmative defense in their answer, they have not pursued a statute of frauds defense in opposition to McLane's motion for summary judgment. For that reason, the court will not consider, sua sponte, whether the statute of frauds . . . would apply in the circumstances of this case." McLane, 1999 WL 813952, at *6, n.3 (citation omitted). Rechberger does not challenge this conclusion on appeal.

entered partial summary judgment for McLane in the amount of $135,157.77, having concluded that Rechberger presented no evidence challenging the reasonableness of these fees.

On appeal, Rechberger contends that the district court ignored his main argument: that Hahn's initial representation of the cost of the case, which Rechberger characterized as a misrepresentation, should cap his liability for fees. Rechberger claimed that in May, 1995, Hahn said to him that "'the Jacobi litigation was a $50,000 case, there are no witnesses, allegations are ten years old, no attorney in his right mind would touch this case with a ten foot pole, litigation costs including trial will probably be around $200,000.'" In his affidavit, Rechberger stated that if Hahn had not made that statement, he "never would have authorized the years of litigation and legal work that was done in that case . . . and would have authorized settling the case for $1.8 million in December of 1995 instead of letting the case proceed to a point just before trial where my attorneys after spending over $600,000 in legal fees tell me that I am looking at a possibility of a four to ten million dollar verdict." Rechberger claims further that Hahn's initial representation on Rechberger's exposure to legal fees applied to any work performed for him on the Jacobi litigation by the two firms that Hahn subsequently joined, Backus and McLane.

Contrary to Rechberger's assertion, the district court addressed this argument in its carefully reasoned summary judgment ruling. The

-16-

district court noted that, before Rechberger even hired McLane, he had already been billed by the Backus firm for $167,507.76 for its work on the Jacobi case. McLane, 1999 WL 813952, at *6. Since "Rechberger received monthly statements from the McLane firm and apparently paid bills without protest that amounted to nearly $200,000 more in fees and expenses for representation in the Jacobi case," he can scarcely claim that he only accepted legal services on condition that they cost no more than $200,000. Id. (finding that "the applicable facts contradict [Rechberger's proffered] interpretations" of Hahn's statement). In other words, Rechberger's conduct refuted his contention that the unwritten agreement with the McLane firm for the provision of legal services was limited by a cap on the Jacobi fees that derived from an earlier representation by Hahn. Moreover, any such alleged cap relating to the Jacobi litigation obviously would not have applied to work performed by the McLane firm for Rechberger on other matters. We find no error in the rulings of the district court in favor of McLane on its motion for partial summary judgment.[7]

**III. The Construction of Count Three of Rechberger's Counterclaim and Third-Party Complaint**

---

[7] The district court found that McLane proved the reasonableness of the fees awarded on partial summary judgment. That ruling also disposed of Rechberger's counterclaim with respect to those fees since the counterclaim alleged that McLane charged unreasonable fees.

Rechberger's counterclaim and third-party complaint set forth three counts:

Count I: Attorney Malpractice
. . . .
13. The above acts by the Third-Party Defendants [Edward Hahn, Jon Meyer, and the McLane firm] constitute attorney malpractice that has directly and proximately caused the Plaintiff damages.
. . . .
Count II: Infliction of Emotional Distress
. . . .
15. The above intentional or negligent acts by the Defendants-in-Counterclaim constitute extreme and outrageous conduct that has caused the Plaintiff severe emotional distress and resulting physical harm.

Count III: Breach of the Implied Contract to charge reasonable and fair attorney's fees
. . . .
17. Defendants-in-Counterclaim [Hahn, McLane, and Meyer][8] in providing legal services to a client have a legal duty to do work and charge for work that is fair and reasonable. Defendants-in-Counterclaim's actions are a breach of the this [sic] implied covenant to charge reasonable and fair attorneys fees.

After McLane, Hahn, and Meyer prevailed on their motions for partial summary judgment on Counts I and II of Rechberger's counterclaim and third-party complaint, only Count III of Rechberger's counterclaim and third-party complaint remained to be adjudicated.

As the trial approached, all parties sought to clarify the type of evidence Rechberger could present. Rechberger hoped to demonstrate

---

[8] Strictly speaking, only Hahn and Meyer are "third-party defendants," and only McLane is a "defendant-in-counterclaim." Since both Rechberger and the district court used the terms interchangeably on some occasions, we will construe each to include Hahn, Meyer, and McLane.

at trial that Hahn and McLane had handled his case negligently.  He submitted a memorandum of law arguing that the court should construe Count III broadly to permit the jury to consider evidence of negligence when it assessed the reasonableness of McLane's fees.

McLane responded that Count III could not be construed so broadly. McLane also argued that Rechberger mischaracterized his request to the court: instead of trying to construe Count III in a certain way, he was trying to amend his complaint by reinstating Count I.  McLane argued that it would be severely prejudiced by this amendment, having prepared its case on the assumption that the question of negligence had already been decided in its favor.

The district court responded to these contentions by construing Count III to "state a claim for breach of an implied covenant to charge reasonable and fair fees and not to include a negligence claim."  The court elaborated as follows:

> Count three states a claim for breach of the third-party defendants' implied covenant to charge reasonable and fair fees for appropriate services.  Count three will allow Rechberger to challenge the rates charged for work and the fees charged for any duplicative or unnecessary work done on his case . . . .  For example, Rechberger will be able to challenge an hourly rate as unreasonably high based on the level of skill of the lawyer who did the work or the nature (but not the quality) of the work performed.  Rechberger may also challenge fees charged for an excessive number of lawyers working on a single project, such as attendance at a deposition.  Count three, however, does not include claims for negligent performance of legal services, and therefore, challenges to the fees based on the lawyers' alleged failure to properly assess the Jacobi case, to settle at an earlier time, or to keep Rechberger informed about the case are not pled in count three and will not be allowed.  In summary,

count three challenges the reasonableness of the fees charged for the services provided, but does not include claims for substandard representation.

In addition, and importantly, the court considered the history of the litigation and the possibility of prejudice:

> To the extent Rechberger seeks to amend count three by implication, his request is denied. Any amendment at this point in time to include the negligence claim Rechberger proposes would be highly prejudicial to the third-party defendants in light of the history of this case and Rechberger's previous acquiescence in the dismissal of his attorney malpractice claim. See, e.g., Acosta-Mestre v. Hilton Int'l, 156 F.3d 49, 51 (1st Cir. 1998) (undue delay and undue prejudice to opposing party are grounds to deny amendment).

In the abstract, evidence of "substandard representation" might be an appropriate part of the inquiry into the reasonableness of attorney's fees. Here, however, the specifics of the case must guide our analysis of Rechberger's challenge to the court's ruling. Rechberger's complaint challenged the quality of the legal representation in Count I and the reasonableness of the fees charged for that representation in Count III. Facing a motion for summary judgment on the negligence count, he did nothing to oppose it, and the court granted partial summary judgment. Under these circumstances, the district court acted well within its discretion in refusing to permit Rechberger to advance anew the negligence claims he failed to support at the summary judgment stage in the guise of the reasonableness challenge that remained for trial.

**IV. The Summary Judgment Ruling for Meyer**

Just as he sued McLane and Hahn, Rechberger also sued Jon Meyer for breach of an implied covenant to charge reasonable fees. Meyer responded with a motion for summary judgment. In his motion, Meyer emphasized that an expert witness hired by Rechberger (attorney Finis Williams) had found Meyer's bills for Meyer's own work "reasonable." Rechberger responded that Williams's report also found that Meyer's firm (Backus) billed in amounts that were excessive "by one-quarter to one-third of the amount billed" because of overbilling by Hahn. Although Rechberger conceded that Backus was Hahn's employer at the relevant time, not Meyer himself, Rechberger asserted that Meyer was responsible for the overbilling because he supervised Hahn's work at Backus. Unimpressed by this improvised respondeat superior claim, the district court granted summary judgment for Meyer on three grounds: (1) Rechberger did not allege vicarious liability in his complaint; (2) Rechberger provided no facts or argument that Meyer, rather than the firm, was Hahn's employer; and (3) Rechberger presented no facts or legal arguments supporting any other agency relationship between Meyer and Hahn.

On appeal, Rechberger lamely invokes liberal interpretations of Rule 8 pleading requirements, ignoring our holding that "[a]lthough the liberal pleading policy embodied in Rule 8 does not require a party to specify its legal theory of recovery, the pleadings must at least

implicate the relevant legal issues." Schott Motorcycle Supply Co. v. Am. Honda Motor Co., 976 F.2d 58, 62 (1st Cir. 1992) (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1286, at 558 (2d ed. 1990) ("the liberal construction accorded a pleading under Rule 8(f) does not require the courts to fabricate a claim that a plaintiff has not spelled out in his pleadings")). Rechberger did not implicate the relevant legal issues in his complaint. Moreover, the court's dispositive ruling on the claims against Meyer came at summary judgment, when the nonmoving party must muster some facts in the summary judgment record to preserve a claim. We agree with the district court that Rechberger provided no facts to preserve a respondeat superior claim against Meyer.

## V. ARC's Liability

ARC is a limited partnership, with Rechberger as its general partner and ARC Trust as its limited partner. The district court granted McLane partial summary judgment against both Rechberger and ARC for $135,157.77, and granted judgment as a matter of law at trial against both Rechberger and ARC for $23,562.00. Rechberger and ARC jointly stipulated to pay $20,666.00 to McLane. However, the district court also granted judgment as a matter of law for ARC at the trial, holding only Rechberger liable for the $39,527.03 awarded to McLane by the jury.

Both ARC and McLane appeal these liability determinations. In its cross-appeal, McLane avers that ARC should be liable for all of the judgments awarded to McLane. In its appeal, ARC claims that the district court erred in holding it liable to pay amounts in excess of the $29,266.21 which McLane attorney Wilbur Glahn claimed was due directly from ARC in the affidavit he submitted in support of McLane's motion for partial summary judgment.

**A. The Judgment as a Matter of Law for ARC (McLane's Cross-Appeal)**

McLane's complaint against Rechberger and ARC alleged three counts, all of which began by asserting that "defendant Rechberger, individually and as agent for defendant, ARC, requested the plaintiff to perform legal services . . . ." The joint answer of ARC and Rechberger admitted that the defendants Rechberger and ARC retained McLane "in the matters listed" in the complaint, which included the Jacobi case, the Bio-San case, and general corporate services.

Both before summary judgment and before trial, ARC did not attempt to distinguish its own liability from that of Rechberger. These two defendants filed a joint answer, a joint counterclaim, and joint objections to partial summary judgment. They also filed a joint "Pre-Trial Statement" on December 22, 1999. ARC did not raise the issue of separateness in any pleading, and (with Rechberger) stipulated to judgments dismissing third-party defendant Jon Meyer (on January 6,

-23-

2000) and ordering payment of $20,666.00 in fees to McLane (on February 2, 2000).

Nevertheless, at the close of evidence in the trial on February 3, 2000, ARC moved for judgment as a matter of law with respect to the remaining fees in dispute ($39,527.00 of Hahn's time as a McLane attorney). The district court granted the motion, explaining its reasons in a colloquy with the attorneys:

> There's nothing about ARC. Now, [plaintiff's counsel] mentioned earlier that ARC and Mr. Rechberger are one and the same, but no certified copy of any court order making that finding has been filed in this case, and ARC appears to be a party floating around here without a place . . . . [M]y recollection of the evidence [is that] Mr. Hahn was advising Rechberger on ARC-related matters but ARC had its own attorneys, and that the attorney-client relationship here was not ARC and Mr. Hahn or ARC and McLane, it was Rechberger and the firm and the individual . . . . I don't see any evidence from which a jury could find that there's an attorney-client relationship between ARC and these individuals.

In light of this ruling, the jury only had to consider whether Rechberger was liable for the remaining $39,527.03 of fees in dispute.

We review the grant of a motion for judgment as a matter of law de novo. St. Paul Fire & Marine Ins. Co. v. Ellis & Ellis, 262 F.3d 53, 61 (1st Cir. 2001); Brennan v. GTE Gov't Sys. Corp., 150 F.3d 21, 25 (1st Cir. 1998). In so doing, we must take the facts in the light most favorable to McLane. Brennan, 150 F.3d at 25. We can only allow the judgment as a matter of law to stand if "the evidence does not permit a finding in favor of [McLane]." Id.

On appeal, McLane challenges the judgment as a matter of law on two grounds. First, McLane contends that since ARC had never asserted before trial that its responsibility for attorney's fees had to be established separately from Rechberger's responsibility, the district court should not have allowed ARC to submit this defense for the first time at the close of evidence at trial. McLane argues that ARC "must be held to the position [it] freely adopted prior to trial. . . . The spirit of flexibility behind the Rules is not intended to permit one of the parties to be booby-trapped." Reyes v. Marine Enters., Inc., 494 F.2d 866, 868 (1st Cir. 1974). Although there is force in this argument, we cannot consider it on appeal because McLane did not present it to the court in opposing ARC's motion for judgment as a matter of law. See United States v. Taylor, 54 F.3d 967, 972 (1st Cir. 1995) ("[A] litigant who deems himself aggrieved by what he considers to be an improper occurrence in the course of trial or an erroneous ruling by the trial judge ordinarily must object then and there, or forfeit any right to complain at a later time.").

However, we do credit the argument that McLane made to the court: namely, that there was enough evidence of ARC's liability presented at trial to require the submission of McLane's claim against ARC to the jury. Hahn, a McLane lawyer, testified that he represented both ARC and Rechberger in the Jacobi and Bio-San litigation. When asked about his role in the litigation while working at Backus, Hahn testified that

-25-

he "had primary responsibility for . . . [e]verything that had to do with ARC and everything that had to do with Bio-San." He said that his role "remained pretty much the same" when he worked at McLane. He also testified to working on a matter benefitting both Rechberger and ARC: arranging payment of the Jacobi settlement to Marion Jacobi from the ARC Trust (the limited partner of ARC) while he was at McLane. Rechberger and ARC were both defendants in the Jacobi litigation. Wilbur Glahn offered similar testimony about the ARC Trust's payment of the $1.35 million settlement of Jacobi.

Although there was testimony at trial suggesting that ARC had been represented by a firm other than McLane, as noted by the court, that testimony did not preclude a finding by the jury that McLane also did legal work for ARC. A verdict may be directed only if the evidence, considered in the light most favorable to the non-movant, "'would not permit a reasonable jury to find in favor of the plaintiff[] on any permissible claim or theory.'" Andrade v. Jamestown Hous. Auth., 82 F.3d 1179, 1186 (1st Cir. 1996) (quoting Murray v. Ross-Dove Co., 5 F.3d 573, 576 (1st Cir. 1993)). The court's entry of judgment as a matter of law for ARC was not consistent with this standard.

Of course, if the jury had been permitted to consider McLane's claim against ARC, found for McLane, and the district court then entered a judgment notwithstanding the verdict, we would have the

option of reinstating the jury's verdict.  It would have been preferable, therefore, for the district court to have

> reserve[d] decision on [the motion for judgment as a matter of law], passing on the legal question only after submitting the case to the jury. . . . [R]efraining from granting a judgment as a matter of law until the jury has had a chance to deal with the merits is frequently a "wise and time-saving precaution."

Gibson v. City of Cranston, 37 F.3d 731, 735 n.4 (1st Cir. 1994) (quoting Talbot-Windsor Corp. v. Miller, 309 F.2d 68, 69 (1st Cir. 1962)).  Under the present circumstances, we must vacate the court's judgment as a matter of law for ARC at trial, and remand for a possible retrial of ARC's liability for legal fees still in dispute when the court ruled.  Given the course and duration of this litigation, we do not relish that prospect.  We hope the parties feel the same way.[9]

## B. ARC's Post-Trial Motions

After the trial ended, ARC tried to distinguish its own liability from that of Rechberger in two motions.  ARC first moved to vacate an attachment of  funds that McLane had obtained at the outset of the case.[10]  After this motion was denied, ARC moved to "alter, amend,

---

[9] The court's error in entering judgment as a matter of law for ARC might have been harmless if the district court had, like the state court in the Jacobi litigation, declared that ARC and Rechberger were indistinguishable.  However, the district court concluded that the parties had provided it with an insufficient factual and legal basis "to permit any definitive resolution of the relationship between ARC and Rechberger."

[10] See footnote 2 above.

vacate or clarify" the judgment pursuant to Rule 52(b) of the Federal Rules of Civil Procedure (which allows a trial court to "amend its findings--or make additional findings--and [to] amend the judgment accordingly"), Rule 59(e) (which permits motions to alter or amend a judgment), and Rule 60(b) (which permits motions for relief from a judgment). The district court denied that motion as well.

In essence, with these two motions, ARC wanted the district court to limit its liability to the $29,266.21 which Wilbur Glahn's affidavit, presented in support of McLane's partial summary judgment motion, directly attributed to work performed for ARC. These fees were due for general corporate work and an escrow matter. According to ARC, it hired McLane solely for these purposes; all of the other fees were incurred by Rechberger.

Whatever the merits of this argument, the district court never reached it on grounds of timeliness. It ruled that "ARC cannot now challenge its liability for the fees and expenses arising from Rechberger's representation when that defense was not raised until ARC moved for judgment in its favor at trial as to the claims then remaining against it." As the district court patiently observed, ARC had never before attempted to distinguish itself from Rechberger:

- ARC and Rechberger answered the complaint jointly without distinguishing between themselves.

- ARC and Rechberger objected jointly to McLane's motion for partial summary judgment, again without distinguishing between them, and the court referred to them jointly in the

order of April 29, 1999, granting partial summary judgment in favor of McLane [for the bulk of the contested fees].

- [When further amounts were awarded in November, 1999,] ARC did not contest its liability on the theory that it was a separate entity. . . .

- Counsel, on behalf of ARC and Rechberger jointly, stipulated before trial to certain amounts that were not disputed.

- The court granted McLane's motion in limine against both ARC and Rechberger as to other amounts [on February 3, 2000]. ARC still did not raise its new theory.

These timeliness considerations are dispositive.  The district court did not abuse its discretion in denying ARC's post-trial motions to vacate the attachment and to grant ARC relief from the judgment.

**VI. The Denial of Attorney's Fees and Expenses Sought by McLane as a Sanction**

McLane twice asked the district court to award it additional attorney's fees as a sanction for the allegedly egregious conduct of Rechberger and his counsel during the litigation over attorney's fees. The district court twice refused to do so.  McLane appeals.  In considering that appeal, "[w]e tread very carefully. . . .for the district court is entitled not only to the ordinary deference due the trial judge, and additional deference in the entire area of sanctions, but extraordinary deference in denying sanctions." Anderson v. Boston Sch. Comm., 105 F.3d 762, 768 (1st Cir. 1997).

**A. The Post-Trial Decision on Sanctions**

The district court only considered its inherent authority as a federal court in denying McLane's post-trial motion for sanctions.

-29-

McLane argues that New Hampshire state law grants litigants a "substantive equity-based right" to attorney's fees, and that the district court erred by refusing to apply this state law.

The U.S. Supreme Court has observed that "'[i]n an ordinary diversity case where the state law does not run counter to a valid federal statute or rule of court. . . .state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed.'" Alyeska Pipeline Serv. Co. vs. The Wilderness Soc'y, 421 U.S. 240, 260 n.31 (1974) (internal quotation marks omitted). Therefore, a state's judicially created rule for an award of attorney's fees, other than as a sanction for the conduct of litigation, may provide a basis for a fee award. See id. (noting that "a state statute requiring an award of attorney's fees should be applied in a case removed from the state courts to the federal courts," and that "[t]he same would clearly hold for a juridically created rule" (citing People of Sioux County v. Nat'l Surety Co., 276 U.S. 238, 243 (1928)).

The district court found that New Hampshire law "permitting an award of attorney's fees under state law" concerns "sanction[s] derived from the state court's inherent powers." This is not entirely accurate. New Hampshire permits "[a]n award of attorney's fees to the prevailing party where the action conferred a substantial benefit on not only the plaintiffs who initiated the action, but on the public as

well." Claremont Sch. Dist. v. Governor, 761 A.2d 389, 392-93 (N.H. 1999) (citing Silva v. Botsch, 437 A.2d 313, 314 (N.H. 1981); Irwin Marine, Inc. v. Blizzard, Inc., 490 A.2d 786, 791 (N.H. 1985)). The New Hampshire courts have reserved such awards for litigation affecting the fundamental rights and interests of groups or the public at large. See id. at 392-94 (awarding fees to towns that sought to assure equitable school funding); Irwin Marine, 490 A.2d at 790-91 (awarding fees to litigant whose case led to greater fairness in a city's public bidding procedures). Given the absence of any cognizable public benefit from this litigation, this substantive equity-based right to attorney's fees has no application to this case.

Apart from this public benefit exception, New Hampshire courts seem to treat the award of attorney's fees for the conduct of litigation as a sanction premised on their inherent authority. See Nash Family Inv. Props. v. Hudson, 660 A.2d 1102, 1109 (N.H. 1995). As the district court correctly observed, it "does not have inherent powers under state law." It has them under federal law. Under the federal standard, a district court may "award attorney's fees to a prevailing party pursuant to its inherent powers when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Dubois v. United States Dep't of Agric., 270 F.3d 77, 80 (1st Cir. 2001) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991)). McLane challenges the district court's application of this

-31-

standard. We review a district court's imposition or denial of sanctions under its inherent power for an abuse of discretion. Chambers, 501 U.S. at 55.

In its post-trial motion for sanctions, McLane argued that Rechberger litigated in bad faith, particularly when he failed to appear at trial. Although expressing some disapproval of the conduct of Rechberger's case, the district court ruled that McLane did not provide "sufficient factual support from the record" to demonstrate that sanctions should be imposed. Specifically, the district court found that:

- [D]espite his lack of success, Rechberger's counterclaims and defenses were not so patently unreasonable or meritless to be deemed frivolous.

- [Given] that he did not have time to take action against McLane before suit was brought, [Rechberger's] counterclaims challenging [McLane's] fees cannot be found to have been indisputably retaliatory.

- [Rechberger may not have testified at trial because] he believed . . . criminal proceedings [could be] brought against him (arising from his daughter's allegations) if he came to New Hampshire.

Searching for an error of law in the court's rulings, McLane argues that the district court erroneously focused on Rechberger's conduct and ignored its grievances against his counsel. To support this claim, McLane points to the district court's statement that "the record presented here does not show that Rechberger, rather than his

-32-

counsel, was the strategist who was responsible for the pleadings, decisions, and method of prosecuting this case."

McLane assumes correctly that if an attorney, rather than a client, is responsible for sanctionable litigation tactics, the court may sanction the attorney. See M.E.N. Co. v. Control Fluidics, Inc., 834 F.2d 869, 873 (10th Cir. 1987) ("Where sanctions are concerned . . . we have cautioned that '[i]f the fault lies with the attorneys, that is where the impact of the sanction should be lodged.'" (quoting In re Sanction of Baker, 744 F.2d 1438, 1442 (10th Cir. 1984)). In other words, if the court here concluded that counsel was the strategist responsible for pleadings and litigation decisions that merited a sanction, the court could not deny sanctions because the party represented by counsel was otherwise blameless.

In our view, however, the district court considered both Rechberger's and attorney Diviacchi's conduct in applying the federal standards for awarding fees as a sanction. Its reference to Rechberger not being "the strategist" was only one factor in its decision not to sanction him. Indeed, the court specifically stated that "[i]n addition, despite his lack of success, Rechberger's counterclaims and defenses were not so patently unreasonable or meritless as to be deemed frivolous." We view this finding as a comment both on the substance of Rechberger's story and Diviacchi's advocacy. Moreover, as the discussion below indicates, the court had already addressed much of

Diviacchi's conduct in a post-summary judgment ruling denying McLane's motion for sanctions against him. Since the district court's analysis addressed nearly all of the wrongs alleged by McLane against both Rechberger and Diviacchi, we find no error of law or abuse of discretion in its post-trial decision not to award attorney's fees as a sanction.

**B. McLane's Claim for Fees Under 28 U.S.C. § 1927**

Aside from its post-trial motion based on state law and federal inherent powers, McLane also advanced a narrower claim for fees pre-trial based on a federal statute permitting the sanctioning of attorneys for abuse of the judicial process. This filing followed its successful motion for partial summary judgment, when McLane moved the court to order sanctions against Rechberger's attorney, Valeriano Diviacchi, pursuant to 28 U.S.C. § 1927. Section 1927 provides: "Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct."

McLane alleged that Rechberger refused to pay his bills in bad faith, and that Diviacchi knew that this refusal was in bad faith. Moreover, McLane alleged that Diviacchi deployed dilatory and deceptive litigation tactics in order to frustrate its efforts to recover a valid debt. McLane focused on Diviacchi's repeated refusal to admit that any

of the fees and expenses sought were undisputed, when he only had evidence to challenge a portion of them.   McLane alleged that Diviacchi's aggressive litigation posture was adopted only for the purpose of "'burdening [McLane] with unnecessary expenditures of time and effort'" and thus warranted sanctions.  Odbert v. United States, 576 F. Supp. 825, 829 (E.D. Cal. 1983) (quoting Lipsig v. Nat'l Student Marketing Corp., 663 F.2d 178, 181 (D.C. Cir. 1980)).

In an order entered on April 29, 1999 in response to McLane's motion, the district court noted the applicable standard of conduct:

> The First Circuit does not require a showing of an attorney's subjective bad faith to meet the section 1927 standard. Instead, sanctions may be appropriate under section 1927 if an attorney's conduct is "unreasonable and harassing or annoying" judged from an objective standard, whether or not the attorney intends to harass or annoy. To be vexatious under section 1927, however, the attorney's conduct must "be more severe than mere negligence, inadvertence, or incompetence."

McLane, 1999 WL 813952, at *8 (quoting Cruz v. Savage, 896 F.2d 626, 632 (1st Cir. 1990)).  The district court then reviewed McLane's grounds for alleging that sanctions should be imposed:

> Counsel for the McLane firm . . . communicated with Rechberger's counsel before filing the motion for partial summary judgment attempting to resolve payment of the undisputed fees based in part on the opinion of Rechberger's expert witness. Rechberger's counsel's response was unhelpful, first claiming that he did not understand the letter, and then debating whether partial judgment can be entered on an undisputed amount.

Id. The district court found that "[c]ounsel's conduct seems to have been sufficiently unreasonable and vexatious to justify the imposition

-35-

of sanctions," but permitted Diviacchi to show cause why sanctions should not be imposed. Id. In response, Diviacchi submitted a brief explaining the litigation tactics challenged by McLane in its motion for sanctions. On February 7, 2000, the district court decided against imposing sanctions without explanation, other than noting its reliance on "the standards set forth in section 1927." McLane challenges that ruling on appeal.

As noted, we accord "'extraordinary deference'" to a district court's decision to deny sanctions. Dubois v. United States Dep't of Agric., 270 F.3d at 80 (1st Cir. 2001) (quoting Lichtenstein v. Consolidated Servs. Group, Inc., 173 F.3d 17, 22 (1st Cir. 1999)). "[T]he responsibility for imposing sanctions properly rests with the judicial actor closest to the litigation--the district court judge--who is in the best position to evaluate the circumstances surrounding an alleged violation and render an informed judgment." Cruz, 896 F.2d at 632.

McLane argues that the district court's Order of February 7, 2000, to deny the motion for sanctions pursuant to § 1927 does not deserve deference because it was not explained. However, the district court carefully analyzed McLane's claims and set forth the standards for the imposition of sanctions pursuant to 28 U.S.C. § 1927 in its April 29, 1999 Order requiring Diviacchi to explain his conduct. See McLane, 1999 WL 813952, at *8. Furthermore, while we have encouraged district courts

to give reasons for denying sanctions, we have not required them to do so: "although the rationale for a denial of a motion for fees or sanctions under Rule 11, § 1927, or § 1988 should be unambiguously communicated, the lack of explicit findings is not fatal where the record itself, evidence or colloquy, clearly indicates one or more sufficient supporting reasons."  Anderson, 105 F.3d at 769.

In response to the district court's order to show cause why it should not impose sanctions, Diviacchi filed a memorandum outlining his rationale for defending Rechberger's refusal to concede the validity of any of his debts to McLane.  Diviacchi explained that he believed that the fees requested in McLane's motions "would be more than cancelled out" by Rechberger's counterclaim.  The district court apparently credited this explanation, finding later in its ruling on the post-trial motion for sanctions that "Rechberger's counterclaims and defenses were not so patently unreasonable or meritless to be deemed frivolous." There was no abuse of discretion in the court's denial of § 1927 sanctions.

## VII. Conclusion

Although we must vacate the judgment as a matter of law for ARC, we commend the district court for handling an exceptionally complex and frustrating case with great skill and patience.  The judge issued at least six lengthy memoranda of decision in support of his orders, all of which were most helpful in reviewing the plethora of issues before

us.  In addition, the court incorporated the numerous orders it entered during the course of this litigation in a useful final judgment it entered on May 12, 2000 (summarized in part in the appendix attached hereto).  We affirm all aspects of that final judgment except for the judgment as a matter of law for ARC.

So Ordered.  Each party shall bear his or its own costs.

**Appendix: Monetary Judgments in the Litigation**

The following monetary judgments were entered during the litigation:

1. Order dated April 29, 1999 granting Motion for Partial Summary Judgment on Count I of McLane's complaint in favor of McLane for the following:

   a. Bio-San fees: $316.97
   b. Corporate expenses: $1,254.21
   c. Corporate fees: $27,303.00
   d. Jacobi expenses: $27,185.09

2. Order dated November 9, 1999 finding $79,098.50 as the amount owed by Rechberger and ARC for the services of Glahn and Whitney on the Jacobi case, pursuant to the partial summary judgment granted on April 29, 1999.

3. Order dated May 27, 1999, granting Motion for Partial Summary Judgment in favor of Jon Meyer on the counterclaim against ARC and Rechberger in the amount of $3,396.40.

4. Pre-trial Order dated February 3, 2000, ordering Rechberger's counsel to stipulate to paying $20,666 in fees left undisputed by Rechberger's expert at trial, Richard Foley.

5. Oral Order granting McLane's motion for judgment as a matter of law for 23,562.00 in fees (McLane's fees from February 7 to February 28, 2000.)

6. Oral Order granting ARC's motion for judgment as a matter of law with respect to the fees remaining in dispute ($39,527.03 of fees billed by Hahn).

7. Jury verdict in <u>McLane</u> v. <u>Rechberger</u>, for McLane in the amount of $39,527.03 (the remaining fees in dispute).