# United States Court of Appeals
## For the First Circuit

No. 06-1771

DIGNO E. TORRES ET AL.,

Plaintiffs, Appellees,

v.

COMMONWEALTH OF PUERTO RICO ET AL.,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Lynch, Circuit Judge,
Selya, Senior Circuit Judge,
and Lipez, Circuit Judge.

Julio Cesar Alejandro Serrano, with whom Roberto Sanchez Ramos, Secretary of Justice, Salvador Antonetti Stutts, Solicitor General, Leticia Casalduc, Auxiliary Solicitor General, Landrón & Vera, LLP, Eileen Landrón Guardiola, Eduardo Vera Ramírez, and Luis A. Rodríguez Muñoz were on brief, for appellants.
Jenyfer García-Soto, with whom Delgado & Fernandez, L.L.P. was on brief, for appellees.

April 4, 2007

**SELYA, Senior Circuit Judge.** In this case, the district court eschewed any evaluation of the merits of a potentially dispositive pretrial motion asserting sovereign and qualified immunity, instead denying the motion because it had been filed beyond a clearly communicated deadline. This interlocutory appeal ensued. After careful consideration, we conclude that we have jurisdiction to entertain this appeal but that the district court acted within the encincture of its discretion in denying the belated motion on temporal grounds. The tale follows.

## I. BACKGROUND

In December of 2002, the plaintiffs (Digno E. Torres, his wife Betzaida Flores, and their daughter Joelly Torres-Flores) filed a civil action in the United States District Court for the District of Puerto Rico, in which they alleged that Torres-Flores, while attending high school, had been sexually harassed by the head of the school, Reynaldo Burgos. Because the high school operates under the aegis of the Puerto Rico Department of Education (the Department), the plaintiffs couched their claims against Burgos in terms of 42 U.S.C. § 1983. They also named the Commonwealth of Puerto Rico as a defendant. Building on the fact that the high school receives federal funds, they couched their claims against the Commonwealth in terms of Title IX of the Education Amendments of 1972. See 20 U.S.C. §§ 1681-1688. In that regard, they alleged

that the Department had not taken appropriate action to rectify the situation following its receipt of an administrative complaint.[1]

The litigation has proceeded in fits and starts, primarily because the parties have waged a number of pitched battles on a wide variety of procedural fronts. We recount here only as much of this chiaroscuro history as is needed to put this appeal into perspective.

In May of 2004, the district court denied the defendants' motions for dismissal of the section 1983 claims and for summary judgment on the Title IX claims. Torres v. Puerto Rico, No. 02-2769, slip op. at 13 (D.P.R. May 5, 2004) (unpublished). Because this ukase rejected the defendants' asserted qualified immunity and Eleventh Amendment defenses, the defendants prosecuted an interlocutory appeal. They simultaneously requested a stay of the district court proceedings pending resolution of the appeal.

Neither the appeal nor the related stay request fared well in this court. Insofar as the Eleventh Amendment defense was concerned, we dismissed the appeal without prejudice because the issue required further factual development and, thus, was not ripe for interim appellate review. See, e.g., Diaz v. Martinez, 112 F.3d 1, 3 (1st Cir. 1997); Stella v. Kelley, 63 F.3d 71, 74 (1st

---

[1]The plaintiffs initially identified Burgos's supervisor and the Puerto Rico Secretary of Education as additional defendants. Neither of these parties remains in the case, and we make no further mention of them.

Cir. 1995). We allowed Burgos's appeal to proceed on the qualified immunity issue but refused to stay the district court proceedings since his appeal seemed unlikely to succeed. Shortly thereafter, Burgos dropped what remained of the appeal.

Meanwhile, the district court was struggling to keep the case on track. The court certified the defendants' appeal as "a frivolous one which is interposed solely for the purpose of delay" and sanctioned the defendants for their dilatory tactics.[2] These tactics rendered the original discovery deadline impracticable and forced the district court to vacate the trial date. The court proceeded to set new deadlines: September 10, 2004, for completion of discovery and October 8 of the same year for the filing of dispositive motions. The court unequivocally warned the parties that "[a]ny further delays or refusals to engage in discovery will result in the imposition of further sanctions."

Despite this admonition, the parties sought a further extension of the discovery deadline. Stating that its "patience [was] at an end," the district court imposed monetary sanctions on both sides. The record makes it perfectly plain, however, that the court placed the primary onus on the defendants; it sanctioned them "[f]or their recalcitrant, defiant, and stubborn attitude and their repeated and blatant disregard" of court orders, and sanctioned the

---

[2]The defendants filed a separate appeal from this order, which we dismissed for lack of appellate jurisdiction.

-4-

plaintiffs for having "stood idly by" while the defendants lollygagged.[3]

Recognizing that discovery remained incomplete, the court extended the discovery deadline to October 8, 2004, and the deadline for filing dispositive motions to October 28, 2004. The court admonished, with conspicuous clarity, that (i) no further extensions of either deadline would be allowed and (ii) no dispositive motions would be entertained after the designated date.

After vacating the original trial date, the district court fixed December 13, 2004, as the new trial date. At a pretrial conference held on November 30, 2004 — after the discovery and dispositive motion deadlines had passed — the court informed the parties that it had to vacate the anticipated trial date due to its crowded criminal calendar. Withal, the court did not resurrect or modify the expired discovery and dispositive motion deadlines. Similarly, the court did not indicate any willingness to entertain late-filed dispositive motions. And in all events, no one moved for leave to file dispositive motions out of time.

Notwithstanding this state of affairs, the defendants, on January 14, 2005, filed a dispositive motion — a motion for judgment on the pleadings. See Fed. R. Civ. P. 12(c). That filing occurred well beyond the court-appointed deadline for the filing of

---

[3]Although the court eventually granted both parties' motions for reconsideration of the monetary sanctions, its order effectively conveys the tenor of the proceedings at the time.

-5-

dispositive motions.[4]  The district court's response was curt and to the point: the court denied the motion, noting "that the deadline for the filing of dispositive motions ha[d] long passed." The court also propounded a second basis for denying the motion, observing that the defendants had "failed to include certified translations of their exhibits" as required by the court's local rules.  This order forms the basis for the instant appeal — the defendants' third interlocutory appeal in this case.

## II.  APPELLATE JURISDICTION

We start with an introspective look at our own jurisdiction.  As a general rule, interlocutory orders are not immediately appealable because they lack the requisite finality. See Domegan v. Fair, 859 F.2d 1059, 1061 (1st Cir. 1988); see also 28 U.S.C. § 1291.  Like every general rule, however, this rule admits of certain exceptions.  The collateral order doctrine maps the contours of one such exception.

---

[4]While the district court labeled this deadline as a deadline for the filing of summary judgment motions, the record makes manifest both that the court intended the deadline to apply to all dispositive motions and that the parties knew that to be the case. To their credit, the defendants have never suggested that they understood the deadline to be limited to summary judgment motions, nor have they argued — either here or in the court below — that the deadline was inapplicable to their motion for judgment on the pleadings.  At any rate, that motion, though captioned as a motion for judgment on the pleadings, explicitly relied upon deposition transcripts and other information procured during discovery.  It was, therefore, the functional equivalent of a motion for summary judgment.

Under that doctrine, a district court's law-based denial of a pretrial motion that asserts a qualified immunity defense is immediately appealable. See Mitchell v. Forsyth, 472 U.S. 511, 530 (1985). This is so, in part, because the defense conveys "an entitlement not to be forced to litigate." Id. at 527. By like token — and for much the same reason — the law-based denial of a pretrial motion that asserts a defense of Eleventh Amendment immunity is immediately appealable. See P.R. Aqued. & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 147 (1993). The defendants contend that, under these principles, we have jurisdiction to review the challenged order now.

There is, however, another way to look at the matter. Here, the district court did not deny the defendants' motion on the merits. Viewed in terms of the district court's rationale, the order seems to be a routine case-management order — and, ordinarily, case-management orders are not amenable to immediate appellate review. See, e.g., In re Recticel Foam Corp., 859 F.2d 1000, 1003 (1st Cir. 1988).

The tension between these seemingly contradictory bodies of authority is more apparent than real. We have held squarely that because "an asserted right not to stand trial is lost no less by a court's refusal to entertain a pre-trial immunity claim as by an erroneous denial of it on the merits," a district court's refusal to consider the merits of a pretrial motion raising an

immunity defense — even a refusal couched as a case-management order — is immediately appealable.  <u>Valiente</u> v. <u>Rivera</u>, 966 F.2d 21, 23 (1st Cir. 1992).  Since we are bound to adhere to prior circuit precedent, <u>see</u>, <u>e.g.</u>, <u>United States</u> v. <u>Wogan</u>, 938 F.2d 1446, 1449 (1st Cir. 1991), we hold that we have jurisdiction over this interlocutory appeal to the extent the appeal raises immunity defenses.[5]

## III.  ANALYSIS

Although the nature of the challenged order does not deprive us of appellate jurisdiction, it does provide the prism through which we must view the lower court's decision.  Typically, we would review the disposition of a motion for judgment on the pleadings de novo.  <u>See</u>, <u>e.g.</u>, <u>Mass. Nurses Ass'n</u> v. <u>N. Adams Reg'l Hosp.</u>, 467 F.3d 27, 31 (1st Cir. 2006).  Here, however, the district court did not reach the merits but, rather, disposed of the motion as a matter of case management.  Thus, a different

---

[5]To the extent that the motion for judgment on the pleadings rested on other grounds, interlocutory review does not lie.  <u>See</u> <u>Domegan</u>, 859 F.2d at 1061-62.  Beyond that, the record reveals one further anomaly.  Both in its brief and at oral argument in this court, the Commonwealth conceded that, as a condition of receiving federal funding, it has waived its sovereign immunity from valid claims under Title IX.  <u>See</u> 42 U.S.C. § 2000d-7(a)(1); <u>see</u> <u>also</u> <u>Pederson</u> v. <u>La. State Univ.</u>, 213 F.3d 858, 875-76 (5th Cir. 2000); <u>Litman</u> v. <u>George Mason Univ.</u>, 186 F.3d 544, 555 (4th Cir. 1999).  Thus, the Commonwealth does not appear to have a colorable legal argument with respect to its sovereign immunity defense.  Nevertheless, our jurisdiction seems clear as to the rejection of Burgos's qualified immunity defense to the section 1983 claims, <u>see</u> <u>Rosario-Diaz</u> v. <u>Gonzalez</u>, 140 F.3d 312, 314-15 (1st Cir. 1998); <u>Valiente</u>, 966 F.2d at 23, so we see no need to inquire further.

standard of review obtains: we examine challenged case-management orders solely for abuse of discretion. See Rosario-Diaz v. Gonzalez, 140 F.3d 312, 315 (1st Cir. 1998). Accordingly, the question we must answer is whether the district court abused its discretion in denying the motion by reason of the defendants' noncompliance with a court-ordered deadline.[6] As we explain below, that question demands a negative answer.

We begin with bedrock: trial judges have an abiding responsibility for the efficient management of the cases on their dockets. To that end, the Civil Rules require a district judge to issue orders "as soon as practicable" fixing deadlines for the completion of discovery and the filing of dispositive motions. Fed. R. Civ. P. 16(b). To help ensure that cases stay on track, district judges are given express authority to sanction parties who do not comply with these deadlines. See Fed. R. Civ. P. 16(f). "We have made it clear that district courts may punish such dereliction in a variety of ways, including but not limited to the preclusion of untimely motions . . . ." Rosario-Diaz, 140 F.3d at 315.

---

[6]To be sure, the district court initially mentioned a second ground for refusing to entertain the motion: the defendants' failure to furnish translations of documents accompanying its motion. That omission was rectified on a motion for reconsideration, so we assume, favorably to the defendants, that the challenged order must stand or fall on the ground of untimeliness.

Since the district court has first-line authority for case-management decisions and is intimately familiar with the ebb and flow of the cases on its docket, an appellate court should "step softly" when it is asked to set aside a district court's choice of sanctions for the violation of a case-management order. United States v. One 1987 BMW 325, 985 F.2d 655, 657 (1st Cir. 1993). It follows inexorably that a party attempting to convince us that the district court misgauged the situation faces a steep uphill climb. See id.; see also Vélez v. Awning Windows, Inc., 375 F.3d 35, 42 (1st Cir. 2004).

These principles apply equally when the trial court's sanctions intrude upon a defendant's ability to assert an immunity defense before trial. See, e.g., Guzmán-Rivera v. Rivera-Cruz, 98 F.3d 664, 668 (1st Cir. 1996). Although state entities and public officials enjoy special protection from the vagaries of civil litigation, this protection is not unlimited. Because immunity defenses may be raised at several different stages of a case, the potential for abuse is substantial. For that reason, the right to assert an immunity defense must be balanced with the district court's obligation to ensure the "just, speedy, and inexpensive" resolution of cases. Fed. R. Civ. P. 1. With these considerations in mind, we have recognized that district courts may be justified in rebuffing pretrial attempts to assert immunity defenses if those attempts are not undertaken with a reasonable degree of diligence.

See <u>Guzmán-Rivera</u>, 98 F.3d at 668; <u>see</u> <u>also</u> <u>Ungar</u> v. <u>PLO</u>, 402 F.3d 274, 293 (1st Cir. 2005).

In this instance, we discern no basis for faulting the district court's calibration of the decisional scales. After all, the defendants filed their motion a full eleven weeks after the expiration of the court's extended deadline. In setting that deadline, the court had stated explicitly that no further extensions would be given. To make a bad situation worse, the defendants did not even mention their planned course of action at the pretrial conference, nor did they deign to seek leave of court before filing a motion that clearly violated the scheduling order.

It is difficult to imagine any circumstances in which a court should be expected to tolerate so brazen a flouting of its case-management authority. The circumstances here are particularly unattractive: the defendants' actions were taken against a backdrop that included an earlier finding that they had engaged in "repeated and blatant disregard" for the court's orders. Under the doctrine of just desserts, a party who engages in a pattern of intransigent conduct is hard-put to complain when the court enforces its orders according to their tenor.

The defendants attempt to blunt the force of this reasoning by noting the absence of a definite trial date (when it vacated the December 2004 trial date, the district court did not set a new one). We rejected a virtually identical argument in an

-11-

earlier case where, as here, the district court did not predicate its denial of the motion on the imminence of trial but, rather, on the need to sanction noncompliance with court orders. See Rosario-Diaz, 140 F.3d at 316 (explaining that "[l]itigants could complicate exponentially the efficacious management of crowded dockets if left free to engage in the kind of dilatory behavior exhibited by the appellants as long as no firm trial date was in prospect"). We see no reason to alter our stance today.[7]

The defendants also suggest that they were unable to meet the deadline for filing dispositive motions because their path to immunity was not clear until the parties reached certain stipulations while preparing for the pretrial conference.[8] This argument is unsupported by the record. The district court denied the defendants' earlier dispositive motions based primarily on the need for the trier of fact to determine whether or not Burgos's acts "were sufficiently severe to compromise the victim's educational opportunities and create a hostile environment." Torres, supra, slip op. at 10. There are no stipulations in the record that can fairly be read to resolve this factual dispute. In

---

[7]The defendants' reliance on Valiente, 966 F.2d at 23, is misplaced. In Valiente, unlike in this case, the district court predicated its refusal to consider the defendants' dispositive motion specifically on the imminence of the impending trial. See id.

[8]The defendants make no persuasive explanation of why they waited a full six weeks after the pretrial conference to file their motion.

all events, the defendants concede that the parties' contentions about two of the incidents at issue — incidents involving Burgos and Torres-Flores — "did differ substantially." Appellants' Br. at 12.

Even if the freshly minted stipulations were as important as the defendants suggest, our conclusion would be the same. The district court was in the best position to assess the validity of the proffered excuse for the untimely filing. The defendants could have, but did not, ask that court to validate their excuse and extend the dispositive motion deadline on that basis. Their failure to do so speaks loudly about the insubstantiality of the excuse.

We add a coda. Whatever the merits of the excuse, trial courts are not required to accept at face value litigants' reasons for their failure to meet deadlines. See Cordero-Soto v. Island Finance, Inc., 418 F.3d 114, 117-18 (1st Cir. 2005); Jones v. Winnepesaukee Realty, 990 F.2d 1, 6 (1st Cir. 1993). That is particularly true where, as here, the parties offering the explanation have exhibited a pattern of dilatory conduct. Cf. Spiller v. U.S.V. Labs., Inc., 842 F.2d 535, 537 (1st Cir. 1988) (affirming sanctions when "the history of foot-dragging evident in the record" made it "difficult to draw any other inference but that [the sanctioned party] did not intend to comply unless absolutely forced to do so").

-13-

## IV.  CONCLUSION

We need go no further.  Although we recognize the importance of defendants' rights to assert immunity defenses before trial, those rights are not sacrosanct.  District courts have wide discretion to set reasonable deadlines for asserting such defenses, and they may impose condign sanctions on parties who do not comply.  The sanction imposed here — effectively, disregard of a belated motion — was not an abuse of discretion.  We therefore uphold the district court's order.  The defendants, of course, remain free to assert their immunity defenses at trial.

**Affirmed**.  Costs are to be taxed in favor of the appellees.