# United States Court of Appeals

## For the First Circuit

No. 07-2766

THOMAS R. JENSEN,

Plaintiff,

STEWART, ESTES & DONNELL, P.L.C.,

Appellant,

v.

PHILLIPS SCREW COMPANY ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Boudin, Selya, and Dyk,[*]
Circuit Judges.

William C. Saturley, with whom Frank W. Beckstein III and
Nelson, Kinder, Mosseau & Saturley were on brief, for appellant.
Kevin T. Peters, with whom Christopher Weld, Jr., Raymond P.
Ausrotas, and Todd & Weld LLP were on brief, for appellees.

October 29, 2008

[*]Of the Federal Circuit, sitting by designation.

**SELYA**, **Circuit Judge**.  There is a line between zealous representation and abuse of the processes of litigation.  Lawyers who overstep it do so at their peril.  In the case before us, the district court found that a law firm had crossed the line by unreasonably and vexatiously multiplying the proceedings in a class action.  See 28 U.S.C. § 1927.  Accordingly, the court imposed sanctions.

The law firm appeals from the sanctions order.  It argues, first, that the record fails to disclose any sanctionable conduct and that, in all events, the district court made mistakes both in finding the facts and in gauging their import.  As a fallback, the firm maintains that, even if its principal argument does not carry the day, the district court nonetheless abused its discretion in refusing to reconsider the sanctions order on a supplemented record.  The defendants, who moved for the imposition of sanctions in the first place, offer rejoinders to each and every aspect of this asseverational array.

On the record at hand, we well understand the district court's frustration with the law firm's apparent carelessness.  Still, we do not think that it can be said, as a matter of law, that sanctions either are or are not appropriate.  In attempting to proceed past that point, we find ourselves largely stymied by gaps in the record.  Consequently, we decide only one of the further

-2-

questions presented, vacate the sanctions order, and remand for a new round of proceedings consistent with this opinion.

## I.  THE UNDERLYING LITIGATION

The genesis of this case seemed ordinary enough; it began with the filing of a class-action complaint by the law firm of Stewart, Estes & Donnell, P.L.C. ("SE&D") on behalf of Thomas R. Jensen and (unnamed) others similarly situated. The complaint designated two related corporations, Phillips Screw Company and Phillips Fastener Products, Inc. (collectively, "Phillips") as defendants and alleged that screws manufactured and marketed by them for use with pressure-treated wood suffered from an undisclosed propensity for premature failure in certain relatively commonplace circumstances.

As matters turned out, Jensen had previously contacted Phillips about his claims and had received at least partial satisfaction for them (the record is opaque as to whether SE&D knew or should have known as much before filing suit). Given this circumstance, Phillips raised an affirmative defense of accord and satisfaction in its answer to the complaint. Along the same line, it argued at an early scheduling conference with the district court that Jensen's vulnerability to this defense rendered him an inappropriate class representative.

The district court agreed; it gave SE&D six weeks (i.e., until January 30, 2007) to amend the complaint to add a new named

plaintiff.  The court subsequently granted SE&D's request for a short extension of that deadline.

Within the allotted time, the law firm moved to file an amended complaint adding a second plaintiff, Larry Vanlandingham. SE&D implied that Vanlandingham would make a superior class representative because he not only had encountered problems when he used Phillips screws in the construction of a deck but also (unlike Jensen) had eschewed a private settlement.

As a Scottish poet once warned, even the most carefully contrived plans may sometimes implode.[2]  Six weeks after moving to add Vanlandingham as its new champion and before the district court ruled on that motion, SE&D abruptly retreated.  This time, it moved to forgo Vanlandingham's entry into the lists because, in the law firm's words, "circumstances have arisen . . . which may compromise the ability of [Vanlandingham] to act on behalf of the class." Phillips opposed this motion and sought dismissal of the action. It explained in an attached affidavit the nature of the "circumstances" to which SE&D had alluded.  The affiant, Gary M. Sable, a Phillips executive, recounted that Vanlandingham's wife, Gayle, had told him (Sable) that she and her husband did not wish to sue but, rather, preferred to reach a private accommodation with the company.  According to Sable, Gayle Vanlandingham expressed

_____

   [2] See Robert Burns, To a Mouse (1785) ("The best-laid schemes o' mice and men [g]ang aft a-gley; [a]n' leave us nought but grief an' pain [f]or promised joy.").

-4-

surprise that her husband's name had been put forward in the class action, noting that neither she nor he had engaged counsel. Neither of them, she added, harbored any desire to become involved in litigation. Sable went on to quote Gayle Vanlandingham as saying that when she and her husband expressed their concerns to SE&D, they were told that Phillips would not honor a warranty claim in the absence of legal action.

At that juncture SE&D did not directly dispute Phillips's allegations. In a responsive pleading, it argued instead that the Sable affidavit constituted hearsay and attributed any change of heart on the part of the Vanlandinghams to Phillips's influence.

In this exchange of pleadings, SE&D gave top billing to the new candidate whom it had recruited to fill the named plaintiff position: Emmett Cox. SE&D asserted that Cox would be an appropriate class representative because an inspection of his deck had "indicated substantial premature corrosion of fasteners manufactured by [Phillips]." Although expressing some skepticism about SE&D's methods, the district court allowed the motion — a ruling that had the effect of shelving Vanlandingham and inserting Cox as a named plaintiff and putative class representative.

Over the next several months, it became apparent that, notwithstanding SE&D's prior assurances, Cox had used a brand of screws not manufactured by Phillips in constructing his deck. When that conclusion became irresistible, SE&D moved to drop Cox as a

plaintiff and to amend the complaint yet again. This proposed amendment sought to substitute Timothy Scott Damm in Cox's place and stead.

Once burned is twice shy. This time the district court gave SE&D two weeks (i.e., until September 13, 2007) within which to file a detailed written statement describing Damm's qualifications as a class-action plaintiff and putative class representative. SE&D never proffered such a statement. At the end of the two-week grace period, it withdrew its motion to amend and terminated the class action in the federal court.

## II.  SANCTIONS

Throwing in the sponge on the class action did not end the matter. Invoking 28 U.S.C. § 1927, Phillips moved for an award of sanctions in the form of attorneys' fees and expenses. In support of its motion, Phillips argued that SE&D had never undertaken a reasonably thorough investigation into the bona fides of any of its four proposed class representatives but had simply plunged ahead with devil-may-care abandon.

SE&D demurred. The law firm posited that sanctions under section 1927 were inappropriate vis-à-vis the initial filing of a complaint; that two of the putative class representatives, Vanlandingham and Damm, were withdrawn before any excess costs accrued; and that if any shortcomings characterized its performance — and it conceded none — those shortcomings were not of the

magnitude required for the imposition of sanctions. In framing its opposition, SE&D for the first time directly contradicted Phillips's account of Vanlandingham's appearance on the scene.[3] As to Cox, SE&D pointed to his reputed statement that he had purchased Phillips screws to justify its initial assertion that he was an appropriate plaintiff.

Although SE&D had requested oral argument, the district court rejected that request. Then, eschewing an evidentiary hearing, it filed a written decision. See Jensen v. Phillips Screw Co., Civ. No. 05-12117, 2007 WL 3104625 (D. Mass. Sept. 26, 2007) ("D. Ct. Op."). In that rescript, the court agreed with SE&D that section 1927 does not authorize sanctions for the filing of an initial complaint, even if that complaint is groundless. Id. at *2-3. It determined, however, that SE&D had engaged in sanctionable conduct vis-à-vis each of the other three erstwhile plaintiffs. Id. at *3-4. To consummate this determination, the court directed Phillips to file an itemized account of counsel fees and expenses incident to those phases of the litigation. Id. at *5.

SE&D moved for reconsideration, accompanying its motion with copious if belated evidentiary submissions. Among other

_____

[3] SE&D's version derived from a telephone call between an SE&D attorney, Robert M. Kirkpatrick, and Vanlandingham himself, in which the latter reportedly recalled having given SE&D permission to name him as a plaintiff.

things, it proffered affidavits from two SE&D attorneys, Robert C. Bigelow and M. Reid Estes, Jr., explaining SE&D's general professionalism and the particular procedures followed by the firm in recruiting Vanlandingham and Cox; an affidavit from Vanlandingham vouchsafing that he had given SE&D permission to name him as a plaintiff; and an affidavit from Cox asserting that he repeatedly, though mistakenly, had told SE&D that he had used Phillips screws to build his deck. Phillips opposed the motion for reconsideration as too late and too little. The district court summarily denied the motion.

In due course, Phillips filed its account. The district court, as a sanction, awarded attorneys' fees and expenses totaling $8,775. This timely appeal followed. In it, SE&D challenges the appropriateness of sanctions and certain procedural aspects of the district court proceedings. SE&D does not challenge the amount of the award.

## III. ANALYSIS

We subdivide our analysis into seven short segments. Our starting point is a synopsis of the legal and evidentiary principles attendant to appellate review of sanctions orders imposed under 28 U.S.C. § 1927. We then briefly address a procedural complaint advanced by SE&D. From there, we proceed to consider the various phases of the litigation in chronological order.

## A. **The Legal Landscape**.

In awarding sanctions, the district court acted under 28 U.S.C. § 1927. The statute permits sanctions to be imposed against lawyers who "multipl[y] the proceedings . . . unreasonably and vexatiously."

In this circuit, courts use a mainly objective standard for the purpose of determining when a lawyer's actions are unreasonable or vexatious. See Cruz v. Savage, 896 F.2d 626, 632 (1st Cir. 1990) (explaining that "[b]ehavior is vexatious when it is harassing or annoying, regardless of whether it is intended to be so" (emphasis supplied)). This focus on objective measurement comports with the majority view across the circuits. See, e.g., Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1241 (11th Cir. 2007); Salkil v. Mt. Sterling Police Dep't, 458 F.3d 520, 532 (6th Cir. 2006); Jolly Group, Ltd. v. Medline Indus., Inc., 435 F.3d 717, 720 (7th Cir. 2006); Julien v. Zeringue, 864 F.2d 1572, 1575 (Fed. Cir. 1989).

Garden-variety carelessness or even incompetence, without more, will not suffice to ground the imposition of sanctions under section 1927. Rather, an attorney's actions must evince a studied disregard of the need for an orderly judicial process, see Jolly Group, 435 F.3d at 720, or add up to a reckless breach of the lawyer's obligations as an officer of the court, see Salkil, 458 F.3d at 532; Braley v. Campbell, 832 F.2d 1504, 1512 (10th Cir.

1987). Bad faith is not an essential element, but a finding of bad faith is usually a telltale indicium of sanctionable conduct. See, e.g., FDIC v. Cooper, 20 F.3d 1376, 1385 (5th Cir. 1994); Cruz, 896 F.2d at 631.

Our standard of review is familiar. We review a district court's imposition of sanctions for abuse of discretion. See Cruz, 896 F.2d at 632. This standard is not appellant-friendly, and "a sanctioned litigant bears a weighty burden in attempting to show that an abuse occurred." Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003). To shoulder that burden, the sanctioned litigant must establish that the sanctioning court ignored "a material factor deserving significant weight," or that its decision rested upon "an improper factor," or that it considered all the appropriate factors but made "a serious mistake in weighing them." Vélez v. Awning Windows, Inc., 375 F.3d 35, 42 (1st Cir. 2004). Of course, if a discretionary decision rests on an error of law, that is perforce an abuse of discretion. See Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 336 (1st Cir. 2008).

Before attempting to evaluate the district court's sanctions order, we pause to clarify an evidentiary issue that is pertinent here. A sanctions order must be evaluated on appeal in light of the record that was before the district court at the time the order issued. Cf. McMillan v. Mass. SPCA, 140 F.3d 288, 309 (1st Cir. 1998) (limiting appellate review of summary judgment

-10-

decision to "only those facts that were available at the summary judgment stage").  In defiance of this principle, SE&D has premised many of its appellate arguments on an array of facts mined from attachments to its motion for reconsideration.  But those facts were not before the district court when it issued the sanctions order.  Because a court's factual findings must be tested in light of the information available to the court when it ruled, we reject SE&D's back-door attempt to reconfigure the record.

**B.  <u>Entitlement to Oral Argument</u>.**

Citing our decision in <u>Media Duplication Services, Inc.</u>, v. <u>HDG Software, Inc.</u>, 928 F.2d 1228 (1st Cir. 1991), SE&D contends that the district court made an error that tainted every aspect of its order when it declined to hear oral argument before imposing sanctions.  That contention is groundless.

In the first place, the case that SE&D cites holds only that, as a matter of due process, a trial court ordinarily may not impose sanctions on a party without giving that party notice and an opportunity to be heard.  <u>See</u> <u>id.</u> at 1238.  Here, however, SE&D was given ample notice; indeed, Phillips filed an aposematic motion. As a result, SE&D had a full opportunity to set out its side of the matter in a written response.  Had it opted to do so, it could have submitted additional affidavits or evidentiary materials as part of that response.  In the usual course, matters can adequately be heard on the papers.  <u>See</u> <u>EEOC</u> v. <u>S.S. Clerks Union, Local 1066</u>, 48

-11-

F.3d 594, 609 (1st Cir. 1995) (holding that dispositive motions may be "heard" on the papers because due process does not require "any particular kind of hearing"); Domegan v. Fair, 859 F.2d 1059, 1065 (1st Cir. 1988) (explaining that "district courts have considerable discretion in deciding whether or not to allow oral argument on a dispositive motion"). So it is here.

### C. **Naming Jensen as a Plaintiff**.

We begin our march through the ranks of the putative class representatives with Thomas Jensen. SE&D's enlistment of Jensen as the initial class representative proved to be improvident. Nevertheless, the district court declined to impose sanctions with respect to that phase of litigation. Reading the unvarnished text of section 1927, the court determined that sanctions were not available under that statute for activity associated with the initial filing of a complaint. D. Ct. Op., 2007 WL 3104626, at *2.

We agree with the district court's reasoning. The touchstone of all statutory construction is the wording of the statute under review. See Aquilar v. U.S. Immig. & Customs Enf., 510 F.3d 1, 8 (1st Cir. 2007); Fed. Refin. Co. v. Klock, 352 F.3d 16, 25 (1st Cir. 2003). Here, the plain language of the statute restricts its operation to acts that "multipl[y]" the proceedings. 28 U.S.C. § 1927. Commencing a proceeding is not the same as multiplying a proceeding. In our view, then, Congress's use of the

verb "multipl[y]" in the text of the statute clearly contemplates that, to be sanctionable thereunder, conduct must have an effect on an already initiated proceeding. Consequently, we join an unbroken band of cases across the courts of appeals holding that a lawyer cannot violate section 1927 in the course of commencing an action. See, e.g., Steinert v. Winn Group, Inc., 440 F.3d 1214, 1224 (10th Cir. 2006); MEMC Elec. Mat'ls, Inc. v. Mitsubishi Mat'ls Silicone Corp., 420 F.3d 1369, 1382 (Fed. Cir. 2005); DeBauche v. Trani, 191 F.3d 499, 511 (4th Cir. 1999); Zul v. E. Pa. Psych. Inst., 103 F.3d 294, 297 (3d Cir. 1996); In re Keegan Mgmt. Co., 78 F.3d 431, 435 (9th Cir. 1996). We therefore affirm the district court's decision that sanctions under section 1927 were not available for any alleged failure on SE&D's part to vet Jensen or investigate the bona fides of his claim.

Let us be perfectly clear about two related points. First, we limit this holding to section 1927. Shoddy work related to the commencement of an action may be sanctionable under other approaches. See, e.g., Fed. R. Civ. P. 11. Second, to the extent that SE&D knew or should have known of Jensen's weaknesses as a lead plaintiff, those weaknesses may inform the question of whether SE&D was guilty down the line of unreasonably and vexatiously multiplying the proceedings. See Bowler v. U.S. INS, 901 F. Supp. 597, 605 (S.D.N.Y. 1995) (noting that section 1927 exists to punish a course of conduct, not merely individual acts).

-13-

### D. **Naming Vanlandingham as a Plaintiff**.

When it ruled on the motion for sanctions, the district court had before it the parties' legal memoranda. It also had before it four main sources of raw factual information anent Vanlandingham: (i) its own observations concerning what had taken place; (ii) the Sable affidavit; (iii) SE&D's response to the Sable affidavit, which contained among other things a recitation of a telephone conversation that supposedly had taken place with Vanlandingham, see supra note 2; and (iv) the bare fact that Vanlandingham's name was withdrawn six weeks after it was proffered. The district court explicitly refused to accept "either party's hearsay version of Mr. VanLandingham's statements," D. Ct. Op., 2007 WL 3104625, at *3, which seemingly eliminated everything except the first and fourth sources of information.[4]

On this slender predicate, the court concluded that SE&D was either "unaware" of Vanlandingham's reluctance to litigate or "persisted in naming him . . . regardless." Id. Either way, the court believed that the naming of Vanlandingham was an act deserving of sanctions. Id.

If the lower court had relied simply on Vanlandingham's seeming unwillingness to proceed and reasonable inferences drawn from the sequencing of the pleadings, that would have been too

---

[4] The district court declined to bolster its conclusion anent SE&D's carelessness by referring to SE&D's "course of conduct" vis-à-vis Jensen.

-14-

little to underpin a sanctions order.  From that exiguous showing, the court had no reliable way of knowing whether SE&D had disregarded Vanlandingham's wishes from the start or, alternatively, had been taken by surprise when he performed an about-face.  Furthermore, such an about-face, unexplained, could not support a finding of sanctionable conduct.  See McLane, Graf, Raulerson & Middleton, P.A. v. Rechberger, 280 F.3d 26, 44 (1st Cir. 2002) (noting that sanctions under section 1927 require a showing that the conduct "be more severe than mere negligence, inadvertence, or incompetence").  After all, a party can turn on a dime, change his mind, and decide to pursue settlement rather than litigation without any fault attaching to his counsel.

Presumably recognizing the need to fill this gap, the district court appears (albeit implicitly) to have credited the hearsay allegations limned in the Sable affidavit.  The court did so notwithstanding its avowed unwillingness to rely upon hearsay accounts.  While credibility determinations ordinarily are grist for the district court's mill — the court, as trier of the facts, can choose to believe one version of events and disbelieve the other, see, e.g., Fed. Refin., 352 F.3d at 27 — the court must apply its methodology uniformly.  Thus, it cannot reject one side's

evidence on hearsay grounds while overlooking the same defect in the other side's proffer.[5]

We need not belabor the point. The short of it is that the district court abused its discretion in reaching the sanctions determination with respect to this phase of the litigation.

### E.  Naming Cox as a Plaintiff.

In an affidavit submitted prior to the sanctions determination, an SE&D attorney, Robert Gore, swore that a pre-suit inspection of Cox's deck showed corrosion of fasteners made by Phillips. Notwithstanding this affidavit, the district court declared that SE&D had conceded that it moved to name Cox as a plaintiff without any such inspection having taken place. The record contains no proof of such a concession.

The closet thing in the record is the following. In opposing sanctions SE&D relied primarily on Cox's statements rather than its own inspection. But the effect of this strategic choice is tempered by the fact that SE&D was responding to Phillips's motion — and Phillips had not challenged SE&D's performance of an inspection but only the reasonableness of its overall inquiry. Under the circumstances, we hardly think that this can be termed a "concession" by SE&D that its earlier statement was false.

---

[5] We do not suggest that the rules of evidence necessarily apply to factfinding in the context of sanctions. That is not the case. See, e.g., Cook v. Am. S.S. Co., 134 F.3d 771, 774 (6th Cir. 1998). But to the extent that a court applies those rules, it must do so even-handedly.

That effectively ends this aspect of the matter. Where, as here, a court relies explicitly on a non-fact to make a factual determination, that reliance constitutes an abuse of discretion. See Vélez 375 F.3d at 42. It follows that, insofar as the sanctions order relates to SE&D's efforts in connection with introducing Cox as the lead plaintiff, the order must be revisited.

## F. Naming Damm as a Plaintiff.

The district court determined that SE&D had committed sanctionable acts in connection with the abortive filing of the motion to substitute Damm as the named plaintiff and putative class representative. SE&D contends that this determination lacks any factual or legal basis.

The unique position occupied by a trial judge gives her an intimate familiarity with the ebb and flow of the cases on her docket. Appellate courts recognize, therefore, that they must defer in large measure to a trial judge's "first-line authority for case-management decisions." Torres v. Puerto Rico, 485 F.3d 5, 10 (1st Cir. 2007). Orders granting or denying sanctions fall within that taxonomy. See, e.g., Roasrio-Diaz v. González, 140 F.3d 312, 314 (1st Cir. 1998). Consequently, appellate courts "step softly" when reviewing the imposition of sanctions. United States v. One 1987 BMW 325, 985 F.2d 655, 657 (1st Cir. 1993).

Given the trial judge's special coign of vantage, common sense suggests that she must be accorded wide latitude in drawing

-17-

inferences as to when multiplication of the proceedings crosses the line between what is acceptable if tedious and what is unreasonable and vexatious. The case law so indicates. See, e.g., Rosario-Diaz, 140 F.3d at 315; Jones v. Winnepesaukee Realty, 990 F.2d 1, 5 (1st Cir. 1993). Distinguishing between what is a vigorous but reasonable attempt to salvage a case that is going badly and a stubbornly capricious attempt to gain advantage by prolonging matters is not easy. There will be a certain class of cases in which the facts may support either characterization. In that middle ground, the abuse of discretion standard tips the balance in favor of the trial court's view. See Anderson v. Beatrice Foods Co., 900 F.2d 388, 393-94 (1st Cir. 1990); In re San Juan Dupont Plaza Hotel Fire Litig., 859 F.2d 1007, 1019 (1st Cir. 1988). It may well be that the proposed substitution of Damm and the subsequent dismissal without explanation of the action under the circumstances could support an imposition of sanctions.

Here, however, there is a rub. As we understand it, the district court premised its finding of sanctionable conduct vis-à-vis Damm at least in part on its findings that SE&D had engaged in sanctionable conduct with respect to two other plaintiffs. See D. Ct. Op., 2007 WL 3104625, at *4.; cf. Obert v. Repub. W. Ins. Co., 398 F.3d 138, 146 (1st Cir. 2005) (acknowledging that sanctions might be appropriate for a series of "hopeless motions," but warning that imposing sanctions "routinely" for easy filing of such

-18-

a motion "would tie courts and counsel in knots"). Because we have set aside those precursor findings (at least for now), see supra Parts III(D)-(E), we must set aside this cumulative finding as well. See Local Div. 589, Amalg. Transit Union v. Massachusetts, 666 F.2d 618, 645 (1st Cir. 1981) (remanding preliminary injunction order for reconsideration where order was predicated on "uncontradicted affidavit" that appellate court found to be disputed). The district court can, of course, revisit this aspect of the matter on remand.

### G. **The Motion for Reconsideration**.

SE&D's final plaint is that the district court abused its discretion in denying its motion for reconsideration of the sanctions order. Because we have determined that the order must be vacated and the matter remanded for further proceedings, this assignment of error has become moot.

In the interest of good practice, we add a coda. When a motion for sanctions is made, the target has an obligation to put its best foot forward. It cannot hang back and withhold evidence helpful to its position merely because it hopes (or even anticipates) that the district court will hold an evidentiary hearing. Such hearings are matters of discretion, see, e.g., In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig., 56 F.3d 295, 301-02 (1st Cir. 1995), and it will be rare

that a court of appeals will meddle with a district court's decision to forgo an evidentiary hearing on a motion for sanctions.

## IV. CONCLUSION

To recapitulate, we affirm the district court's ruling as to the inapplicability of 28 U.S.C. § 1927 to the initial pleading herein. See supra Part III(C). But although the able district judge had ample reasons to chafe at the way in which SE&D conducted the plaintiffs' side of this litigation, we are constrained, for the reasons elucidated above, to vacate the remainder of the sanctions order. We remand to the district court for further proceedings consistent with this opinion.

We envision that the district court, on remand, will afford the parties a further opportunity to submit materials in support of their respective positions. Whether to entertain oral argument and/or convene an evidentiary hearing remains within the informed discretion of the district court. Nothing that we have seen in the record thus far convinces us that SE&D's actions are or are not sanctionable. Consequently, we take no view on the appropriate outcome of those incremental proceedings.

Although we need go no further, we think it advisable to mention another possibility. The battle that is presently being fought is obviously about principle, not money (experience suggests that each side has spent more than the dollar amount of the sanctions in briefing and arguing this appeal). As a matter of

mutual interest, the time may have come for the protagonists to call it quits.  On the one hand, Phillips prevailed in the district court and can credibly claim a moral victory.  On the other hand, SE&D has prevailed in large part on this appeal and, at this point, has erased the stain on its escutcheon.

**Affirmed in part, vacated in part, and remanded.  All parties shall bear their own costs**.


- Concurring Opinion Follows -

**BOUDIN, <u>Circuit Judge</u>** (concurring). The sanction in this case rested, it appears, not upon a single act but on a cumulative course of conduct: the successive proffer and then abandonment of four successive lead plaintiffs; an inference of inadequate and arguably careless investigation in most or all of these four instances; and the suspicious failure to explain at all why the fourth plaintiff was withdrawn. That the result--a defunct law suit--wasted court time and imposed litigation costs on the defense can scarcely be doubted.

The record permits a finding of recurring negligence. The first plaintiff had settled before the case was brought; the second, even if he originally consented to proceed, does not seem to have had any serious commitment to the case; the third had not used Phillips screws; and the fourth was pulled without explanation--the fair inference being that problems had again been belatedly identified. True, the firm later offered new exculpatory affidavits, but the district court permissibly declined to consider them.

The law is thin as to whether the vexatious litigation statute is violated by successive acts of negligence, doubtlessly prolonging the litigation but aimed (however fumbling the efforts) at success on the merits rather than harassment. The cases say

-22-

that simple negligence is not enough[6] but, where the facts involve successive acts of negligence, the courts sometimes uphold sanctions, using the phrase "bad faith" but without any indication that it rests on more than repeated error.[7]  Here, the district court's comment on the firm's affidavit about the deck inspection suggests that the judge thought it worse than mere negligence.

Nevertheless, strictly speaking it is possible (if unlikely) that the second plaintiff (VanLandingham)--was originally on board with qualification and then simply reversed course; and while the firm's initial affidavit on the suitability of Cox as the third lead plaintiff is no model of clarity (e.g., as to who supposedly did the deck inspection), it is hard to tell without more facts whether it was also disingenuous--as the district judge implied--or just what inquiries the firm had made.

There is a good deal of carelessness in litigation and, where the trial judge thinks the situation is serious enough to take the time for sanctions, the judge on the scene is entitled to a healthy latitude in making the ultimate judgment.  Still, the stakes are high when a law firm is sanctioned for improper behavior, Obert v. Republic Western Ins. Co., 398 F.3d 138, 143

---

[6]See, e.g., United States v. Wallace, 964 F.2d 1214, 1219 (D.C. Cir. 1992); Cruz v. Savage, 896 F.2d 626, 632 (1st Cir. 1990);  In re Ruben, 825 F.2d 977, 984 (6th Cir. 1987).

[7]O'Rear v. American Family Life Assur. Co. of Columbus, Inc., 144 F.R.D. 410, 413-14 (M.D. Fla. 1992); Stewart v. City of Chicago, 622 F. Supp. 35, 37-38 (N.D. Ill. 1985).

(1st Cir. 2005), and the risk remains that sanctions may be sought for tactical reasons--for example, to discourage litigation.

There having been no evidentiary hearing, the lack of clarity in the record can justify a remand, especially as our precedents on fault-based lawyer sanctions have been fairly strict. Obert, 398 F.3d at 146-47; Young v. City of Providence, 404 F.3d 33, 40-41 (1st Cir. 2005). It would be a different matter if, after Cox had been withdrawn, the district court had held that three strikes were enough and simply declined to allow any further amendment.