VICTOR MARRERO, United States District Judge
Defendant U.S. Bank National Association ("U.S. Bank") moves to set aside the October 19, 2017 Order of Magistrate Judge James C. Francis denying its request to sanction Royal Park Investments SA/NV ("Royal Park") for allegedly violating a discovery order. Royal Park Invs. SA/NV v. U.S. Bank Nat'l Assoc., No. 14 Civ. 2590, 2017 WL 4748054, at *1 (S.D.N.Y. Oct. 19, 2017) (hereafter, " October 2017 Order"). U.S. Bank acted as the trustee for certain residential mortgage-backed securities ("RMBS") trusts. Investors in these trusts, such as Royal Park, are known as certificate holders. Royal Park alleges that U.S. Bank breached its contractual duties as trustee by not sufficiently safeguarding the loans that make up the trust, thereby harming certificate holders.
The issue before the Court in this proceeding relates to a discovery dispute. U.S. Bank contends that Royal Park had not produced all of the internal valuation documents of certain certificates and that these documents may show that those certificates lost value before U.S. Bank's alleged breaches of duty. U.S. Bank further argues that the missing valuation documents fatally undermine Royal Park's ability to prove damages for breach of contract, and that Royal Park should be sanctioned for failing to produce those documents. Magistrate Judge Francis correctly found, however, that U.S. Bank's expert was able to evaluate numerous certificates without the missing valuation documents. The expert managed this task in part by virtue of other documents Royal Park produced, along with other public information. Given its own expert's ability to rely on these documents to perform the underlying review, U.S. Bank has not sufficiently demonstrated that it was prejudiced to justify the sanctions it seeks. The Court therefore denies U.S. Bank's motion to set aside the October 2017 Order.
*301 I. BACKGROUND
A. FACTUAL AND PROCEDURAL BACKGROUND
In light of the case's long history before this Court, the Court assumes familiarity with the extensive factual and procedural developments and addresses only briefly the relevant background below. As stated in further detail in this Court's order denying class certification, Royal Park asserts that trustee U.S. Bank breached its contractual obligations by failing to protect trust assets (i.e., the loans making up the certificates) in twenty-one RMBS trusts under certain contractual agreements on behalf of certificate holders. See Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n, 324 F.Supp.3d 387, 392 (S.D.N.Y. 2018). Under those agreements, U.S. Bank has the right, on behalf and for the benefit of certificate holders, to enforce various transferors' representations and warranties about the credit quality and characteristics of the underlying loans and the accuracy of the data conveyed about the loans. See id. According to Royal Park, in certain circumstances U.S. Bank is obligated to take remedial action. See id.
For example, upon discovering a material breach regarding a loan, U.S Bank must request that the transferor cure the breach and, if such breach is not cured, the transferor may either substitute or repurchase the defective loan. Royal Park alleges that U.S. Bank has not fulfilled those duties under the contract, thereby harming certificate holders such as itself. See id. As part of its breach of contract claim, Royal Park must eventually show the "damages suffered as a result of the breach." Id. at 396 n.5 (internal quotation marks omitted).
In March 2016, U.S. Bank successfully moved to compel Royal Park to produce relevant internal records of Fortis Bank SA/NV ("Fortis Bank") -- the assignor of the claims and certificates at issue in the suit. (See Dkt. Nos. 75 at 1, 78, 141 at 4.) Royal Park protested at the time that it no longer had possession, custody, or control over Fortis Bank's documents, (see Dkt. No. 141 at 4-5.)
U.S. Bank then unsuccessfully moved to sanction Royal Park under Federal Rule of Civil Procedure 37(b) (" Rule 37(b)") for failing to produce all the documents as ordered. (See Dkt. Nos. 96, 141.) Magistrate Judge Francis agreed with U.S. Bank that Royal Park had failed to collect and produce all the relevant Fortis Bank documents as required. See October 2017 Order at *1. However, Magistrate Judge Francis ruled that U.S. Bank did not show the failure warranted sanctions because U.S. Bank had not demonstrated that it had been prejudiced. See id. He permitted U.S. Bank to move for sanctions if and when it could demonstrate sufficient prejudice. Id.
Through this time, Royal Park worked to produce the requested documents and eventually produced over 80,000 documents from Fortis Bank over the years (see"Pl. Mem.," Dkt. No. 347 at 2). As Royal Park produced Fortis Bank documents, U.S. Bank's complaint about the missing documents became more defined. In particular, in March 2017, U.S. Bank reinstituted its motion for sanctions, in accordance with the window Magistrate Judge Francis left open, on the grounds that Royal Park had not produced Fortis Bank's own valuations and impairments[1] of the certificates. (See Dkt. No. 180 at 4.) U.S. Bank argued that these documents *302 were important as exculpatory evidence regarding causation and damages. (See id. at 7-8.) Specifically, U.S. Bank argued these documents would show that Fortis Bank had already determined the certificates were valueless before U.S. Bank's alleged breaches. (See id. ) Thus, according to U.S. Bank, Royal Park could not have suffered losses from any breach. (See id. ) Based on Royal Park's failure to produce these requested documents, U.S. Bank sought to preclude Royal Park's damages claim. (Id. at 14-16.)
In its initial response, Royal Park argued that its ongoing document productions made briefing premature, and obtained from Magistrate Judge Francis a long extension of time to file its opposition on this matter. See October 2017 Order at *1. Once Royal Park submitted its response after months of additional discovery, U.S. Bank's reply brief focused on what is largely the subject of its current objections: that it had not received Fortis Bank's "final impairments." (See Dkt. No. 302.)[2] The parties addressed the issue further in sur-reply briefing. (See Dkt. Nos. 310-1, 315, 320.)
After this eighteen-month saga with numerous rounds of briefing, Magistrate Judge Francis issued the October 2017 Order denying the sanctions motion. He found that U.S. Bank did not show that it was sufficiently prejudiced to support an imposition of sanctions. U.S. Bank now submits objections to the October 2017 Order and moves to set it aside pursuant to Federal Rule of Civil Procedure 72 (" Rule 72"). (See Dkt. No. 338.)
B. THE OCTOBER 2017 ORDER
Because Magistrate Judge Francis had previously held that Royal Park had not fully complied with the discovery order, the only open issue he had to address was whether U.S. Bank was sufficiently prejudiced to warrant precluding Royal Park's damages evidence. See October 2017 Order at *1. Magistrate Judge Francis evaluated "whether Royal Park has failed to produce information so necessary to that process that U.S. Bank has suffered prejudice warranting preclusion" and "not whether there is some additional information that would be helpful in a damages calculation." Id. at *4.
To answer this question, Magistrate Judge Francis examined the declarations submitted by U.S. Bank's expert Christopher M. James ("James") and the declaration in response by Royal Park's expert. James's conclusion was that the missing valuation documentation are "essential to assess the validity of Royal Park's claimed damages" and other data would be insufficient to measure them. Id. at *2-3. In response, Royal Park's expert noted that financial instruments vary over time and also discounted Fortis Bank's impairments as being particularly instructive over publicly-available information. Id.
In examining the declarations, Magistrate Judge Francis first pointed out that James "prepared estimate valuations for fifteen certificates beyond those that were written down to zero" based on a variety of available sources, and that he was able to arrive at a "defensible judgment under the circumstances." Id. at *4. Magistrate Judge Francis recognized that James "found it more challenging" to engage in this exercise for other certificates due to "limited information in the documents produced by Royal Park." Magistrate Judge Francis did not find that constraint "sufficient *303 ... to provide a basis for sanctions." Id. He stated a few reasons, which U.S. Bank contests:
First, it is not apparent how the data for these [c]ertificates differs from that available for the others which, according to Dr. James, was also inconsistent, but which was adequate for him to conduct an analysis.
Second, Royal Park does appear to have produced final impairment figures through the end of 2008.
Third, any impairments taken for Q1 2009 are of limited relevance, since (1) "the scope of the [Q1 2009] impairment exercise [was] limited to the retained portfolio," that is, assets that Fortis had not sold to Royal Park and which, therefore, are not at issue here[ ], and (2) any losses suffered by Fortis were realized as of August 31, 2008, since, according to the terms of the transfer to Royal Park, any change in value after that date would be to the benefit or detriment of Royal Park.
Id. (citations to the record omitted, formatted for clarity).
Magistrate Judge Francis then addressed two more arguments. First, he rejected U.S. Bank's contention that without Fortis Bank's documents, U.S. Bank could not "ascertain the cause for the loss of value." Id. He noted that "U.S. Bank has demonstrated a reasonable basis for seeking information about when" impairments were taken, but also noted that U.S. Bank did not show that Royal Park or Fortis Bank had exclusive control over the information as to "why any such losses occurred." Id. at *5 (emphasis in original).
Finally, Magistrate Judge Francis addressed U.S. Bank's concerns that many of the produced documents could not be authenticated. He did not find this surprising given the lapse of time since their creation and stated that resolution of the problem would be better resolved by "evidentiary principles at trial." Id.
II. STANDARD OF REVIEW
Under Rule 72, a district judge reviews a "pretrial matter not dispositive of a party's claim or defense" under the "clearly erroneous or ... contrary to law" standard. Fed. R. Civ. P. 72(a). However, a pretrial matter that is "dispositive of a claim or defense" is reviewed de novo. Fed. R. Civ. P. 72(b) ; see also 28 U.S.C. § 636(b)(1)(A). A district judge may accept, set aside, or modify, in whole or in part, the findings and recommendations of a magistrate judge. See Fed. R. Civ. P. 72(b) ; DeLuca v. Lord, 858 F.Supp. 1330, 1345 (S.D.N.Y. 1994).
The parties disagree as to the applicable standard of review. U.S. Bank argues that the standard of review should be de novo. ("Def. Mem.," Dkt. No. 339 at 11.) U.S. Bank reasons that a request for sanctions should be reviewed de novo, while acknowledging that "whether motions for sanctions are dispositive or non-dispositive is currently a contested point of law." (Id. (citing Colida v. Nokia Inc., No. 07. Civ. 8056, 2008 WL 4449419, at *2 n.4 (S.D.N.Y. Sept. 29, 2008), aff'd, 347 F. App'x 568 (Fed. Cir. 2009) ).) U.S. Bank points to no cases where a court reviewed a denial of sanctions such as this de novo.
On the other hand, Royal Park points to cases from district courts in the Second Circuit looking to the "effects" of a sanctions order to determine whether it is dispositive under Rule 72. (Pl. Mem. at 11 (citing Khatabi v. Bonura, No. 10 Civ. 1168, 2016 WL 8838889, at *3 (S.D.N.Y. Apr. 21, 2016) ("Thus, in determining between dispositive and non-dispositive discovery sanctions, the critical factor is what sanction the magistrate judge actually imposes, rather than the one requested *304 by the party seeking sanctions."); Steele v. Costco Wholesale Corp., No. 03 Civ. 0713, 2005 WL 1068137, at *1 (E.D.N.Y. May 6, 2005) ).) In those instances, the courts reviewed denials of sanctions like one in this case as non-dispositive matters. Similarly, the Court of Appeals for the Second Circuit has noted that "the imposition of certain sanctions under Rule 37, in some instances, may be considered 'case-dispositive,' requiring de novo review." Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir. 1990) (emphasis added).
Denying the preclusion sanction for a discovery violation is not a case-dispositive order warranting de novo review. It does not dispose of any claim or defense. Thus, the Court follows the analysis and conclusions of the other courts in this Circuit and reviews the October 2017 Order under the Rule 72(a) clear error standard.
III. DISCUSSION
Before imposing sanctions to preclude under Rule 37(b), a court looks to considerations such as "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of ... noncompliance." World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp., 694 F.3d 155, 159 (2d Cir. 2012). Courts also often consider whether the noncompliance prejudices other parties, especially when those parties seek severe sanctions. See, e.g., Agiwal v. Mid Island Mortg. Corp., 555 F.3d 298, 302 (2d Cir. 2009).
Having addressed the other elements of the Rule 37(b) inquiry in a previous order, the only issue Magistrate Judge Francis had to consider was whether U.S. Bank suffered prejudice from Royal Park's lack of production of certain documents. Magistrate Judge Francis correctly considered whether Royal Park deprived U.S. Bank "of information so necessary to the process that U.S. Bank has suffered prejudice warranting preclusion." October 2017 Order at *4. This is a "case-by-case" inquiry. Sekisui Am. Corp. v. Hart, 945 F.Supp.2d 494, 505 (S.D.N.Y. 2013). As Magistrate Judge Francis correctly recognized, when sufficient similar evidence remains available through other means, a severe sanction such as the preclusion of evidence requested here is generally inappropriate. See, e.g., Cedar Petrochems. Inc. v. Dongbu Hannong Chem. Co., 769 F.Supp.2d 269, 293 (S.D.N.Y. 2011) (declining to impose sanctions in part because "other evidence ... is still available"); Distefano v. Law Offices of Barbara H. Katsos, PC, No. 11 Civ. 2893, 2017 WL 1968278, at *27 (E.D.N.Y. May 11, 2017) ("[T]here is some indication that the missing information has been (or could be) obtained from other sources, which weighs against finding prejudice here."). U.S. Bank did not address the applicable standard or otherwise object to Magistrate Judge Francis's formulation of it.
Instead, U.S. Bank raises three objections to the sanctions denial on the merits: that Magistrate Judge Francis (1) relied "solely on inadmissible evidence" (Def. Mem. at 9); (2) erroneously interpreted that evidence (see id. at 14); and (3) "applied the wrong causation standard" (id. at 16). These objections are considered here in turn.
A. ADMISSIBILITY OF EVIDENCE
U.S. Bank argues that three of Magistrate Judge Francis's statements are supported by inadmissible evidence and contradicted by the only admissible evidence. They are: (1) that "Royal Park does appear to have produced final impairment *305 figures through the end of 2008"; (2) that "the scope of the [Q1 2009] impairment exercise [was] limited to the retained portfolio"; and (3) that "any losses suffered by Fortis [Bank] were realized as of August 31, 2008." (Def. Mem. at 9, 11.)
As an example, regarding the first statement, U.S. Bank argues that the "final impairment figures" are attached to a "content-free attorney declaration" and lack support showing that they are "final line-by-line impairments." (Id. at 9.) U.S. Bank also points to the deposition testimony of a Fortis Bank employee noting that "final impairment documents were kept only by Fortis [Bank's] 'local' accountants," whose documents were not produced. (Id. at 10-12.) A key, contested premise to these points is U.S. Bank's argument that Fortis Bank had legal obligations to "recognize impairments" for the certificates on its books in Q4 2008 and Q1 2009 and so, if the documents produced do not contain those impairments, others unproduced -- purportedly supporting U.S. Bank's arguments -- must. (See id. at 11.) U.S. Bank argues that taking these points together, "there was no admissible evidence before the Court to rebut Dr. James' assertion that ... [Royal Park] has not produced" the final impairments. (Id. at 11.) U.S. Bank makes similar arguments for Magistrate Judge Francis's two other statements. (See id. at 11-14.)
Royal Park responds that all the underlying documents would be admissible as business records and otherwise bear sufficient "indicia of reliability" to be relied upon. (Pl. Mem. at 14-16.) Further, Royal Park argues that Magistrate Judge Francis's conclusions about the documents are supported by "the plain text of the documents themselves," which he quoted. (Id. at 16-18.) Royal Park also disagrees with U.S. Bank's conclusions regarding the deposition testimony. (Id. at 16-17.) Finally, Royal Park argues that the relevant evidence "need not be admissible" for the purposes of resolving the sanctions motion. (Id. 14-15.)
As noted above, Magistrate Judge Francis addressed admissibility and stated that it would be better addressed "with the Court's application of evidentiary principles at trial." October 2017 Order at *5. The Court agrees. Thus, the first question should be whether Magistrate Judge Francis could rely on supposedly inadmissible evidence for these findings regarding sanctions, which would moot the evidentiary issue for now.
Royal Park cites no controlling Second Circuit authority or district court cases squarely addressing the issue in a similar context. Instead, the cases Royal Park cites involve fact-finding requirements that go beyond simply looking at a document at the center of a discovery dispute. For example, the Court of Appeals for the Eight Circuit reversed a district court's imposition of sanctions for alleged discovery violations resulting from bribing witnesses and altering documents, among other acts, holding the evidence of such acts must bear "indicia of reliability," especially when imposing "the draconian sanction of dismissal with prejudice." Sentis Grp., Inc., Inc. v. Shell Oil Co., 559 F.3d 888, 900 (8th Cir. 2009). Another case addressed sanctions under 28 U.S.C. Section 1927 when one counsel allegedly assaulted another in the courtroom. Cook v. American S.S. Co., 134 F.3d 771, 774 (6th Cir. 1998). These cases and the others Royal Park cites,[3] *306 involve far different fact-finding requirements than those at issue here and provide limited general principles.
U.S. Bank distinguishes the cases Royal Park cites, but it offers no case law supporting the proposition that Magistrate Judge Francis was obligated to make admissibility findings and then weigh and consider only the admissible evidence. (See Dkt. No. 349 at 6-8.) The Court has likewise not found any cases addressing similar arguments.
As U.S. Bank recently argued in defense of Magistrate Judge Lehrburger's order dated July 9, 2018, "a magistrate judge's decision is contrary to law only where it runs counter to controlling authority." (Dkt. No. 400 at 4 (quoting Pall Corp. v. Entegris, Inc., 655 F.Supp.2d 169, 172 (E.D.N.Y. 2008) ).). Absent a controlling standard here, Magistrate Judge Francis did not err when he examined the documents, deposition testimony, and counsels' representations about their contents when making the three findings to which U.S. Bank now objects.[4] Three additional points support this ruling.
First, such a ruling is necessary to avoid imposing potentially inconsistent obligations on Royal Park under the Federal Rules. Under Federal Rule of Civil Procedure 26, parties must produce relevant "nonprivileged material" but "discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26. One key question here is whether Royal Park's failure to produce certain documents prejudiced U.S. Bank in light of the documents Royal Park did produce. If documents need not be admissible for production under the Federal Rules, it seems inconsistent that a sanctions motion based on interpreting those very same documents must be decided only on admissible evidence and without review of the underlying documents themselves. In essence, U.S. Bank has claimed that Royal Park has not produced certain documents. When Royal Park points to examples of the documents based on materials it did produce, U.S. Bank's expert contests that characterization, and U.S. Bank argues both that the Court cannot evaluate any such document itself and that there is no other admissible evidence available to resolve the issue.[5] This proposed methodology is not amenable to resolving discovery disputes that often hinge on evidence whose authentication or admissibility is yet to be formally determined by the Court for the purposes of trial.
Second, as stated in one of the cases that Magistrate Judge Francis cites, a court is free to "take [evidence] into account by virtue of its own study of the exhibits" even "when neither side attempted to introduce any of the" evidence. Distefano, 2017 WL 1968278, at *26. The type of fact finding appropriate here differs that involving severe misconduct, such as whether a party destroyed or purposefully withheld documents or lied to the *307 court. Here, the Court can examine the documents, as Magistrate Judge Francis did, sufficiently enough to determine their appropriateness for a sanctions motion. This observation is especially valid given that at least some of the documents at issue bore enough "indicia of reliability" for U.S. Bank's own expert to rely on them in part. See October 2017 Order at *4.
Third, Royal Park raises questions as to U.S. Bank's efforts to authenticate the underlying documents at depositions, undermining U.S. Bank's argument that only admissible documents should be considered. For example, Royal Park points out that when U.S. Bank was deposing the relevant witnesses, it failed to provide the associated metadata or contextual emails to the deponent when asking about the valuation documents. (See Pl. Mem. at 16 n.8.) There may still be an open question on the documents' ultimate admissibility or relevance which counsels in favor of not finding a sufficient showing of prejudice here. Cf. Distefano, 2017 WL 1968278 at *27 (noting that the party moving for sanctions failed to ask deponents about certain key documents, undermining its argument that it was missing key information)
For all the preceding reasons, the Court is persuaded that in ruling upon U.S. Bank's sanctions motion Magistrate Judge Francis did not need to rely only on admissible evidence. Therefore, Magistrate Judge Francis's decision was not clearly erroneous or contrary to law when evaluating and relying upon the documents and on Royal Park's arguments about them.
B. MAGISTRATE JUDGE FRANCIS'S CONCLUSIONS
Beyond its argument regarding the admissibility of the evidence, U.S. Bank contends that Magistrate Judge Francis misinterpreted the evidence, pointing to two specific statements: (1) "any losses suffered by Fortis Bank were realized as of August 31, 2008, since, according to the terms of the transfer to Royal Park, any change in value after that date would be to the benefit or detriment of Royal Park"; and (2) "it is not apparent how the data for [the six certificates James could not evaluate] differs from that available for the others which, according to Dr. James, was also inconsistent, but which was adequate for him to conduct an analysis." (Def. Mem. at 14.)
The first statement stems in part from the contract between Fortis Bank and Royal Park. As the Fortis Bank annual report explains, Fortis Bank sold the certificates to Royal Park in May 2009, but "based on a valuation of the underlying instruments as at 31 August 2008." (Pl. Mem. at 20.) U.S. Bank had originally argued that no authenticated evidence supported this reasoning and that Fortis Bank continued to take impairments through this time period. (Def. Mem. at 14-15.) In reply, U.S. Bank did not address Royal Park's opposition highlighting this language.
This contractual language regarding the valuation date for the transaction is straightforward. The Court finds that and Magistrate Judge Francis did not clearly err in finding that Q1 2009 impairments are of "limited relevance" given this language. See October 2017 Order at *4. Royal Park was committed to the values of the certificates as of August 31, 2008. Even if there was a legal obligation to recognize impairments after that date, there is conflicting evidence regarding who was performing impairments at that time and more importantly, with what precision. (See Pl. Mem. at 20 n.12 (highlighting Fortis Bank deponent testimony that "you cannot book impairments on a portfolio to be sold").) Such factual differences constitute a sufficient basis to support Magistrate *308 Judge Francis's finding that U.S. Bank was not prejudiced in lacking these documents, and thus the finding is not clearly erroneous.
As to the second statement, U.S. Bank argues that its expert could not price the certificates because there was no public "pricing service data or price quotes from market participants." (Def. Mem. at 16.) Royal Park responds that the discovery produced contained impairment figures for certain of the certificates and other market prices. (Pl. Mem. at 22.)
U.S. Bank's expert's full reasoning for his difficulties valuing those certificates is instructive:
Although some documents produced by Royal Park suggested possible impairment figures ... for Q4 2008 and/or Q1 2009, those documents (a) conflicted with other documents that suggested substantially different impairment figures for the same time periods; or (b) contained figures whose sources were not identified and could not be substantiated; or (c) both.
October 2017 Order at *4.
James's statement about the availability of at least some impairment documents is consistent with Royal Park's argument, especially in light of his assertion that data for the certificates (which he could value) also contained "inconsistent" information. See id. Moreover, Magistrate Judge Francis's findings cannot be divorced from his other findings about the relevance of impairment figures in light of the pertinent contractual language. In sum, Magistrate Judge Francis did not clearly err in evaluating the evidence in the context of competing facts and limited information from James regarding how the available Royal Park data differed as between the certificates James could value versus those he could not.
C. THE CAUSATION STANDARD
Finally, U.S. Bank argues that Magistrate Judge Francis applied the wrong causation standard in denying its motion for sanctions. U.S. Bank maintained that the missing Fortis Bank valuation documents would show "the cause for the loss of value" of the certificates. (Def. Mem. at 16.) In response to this argument, Magistrate Judge Francis held that:
While U.S. Bank has demonstrated a reasonable basis for seeking information about when the Certificates lost value, it has not explained how information exclusively in the possession of Royal Park or the Assignors would shed light on why any such losses occurred. It is likely that causation will be proven through statistical analysis, not by reference to comments in an email authored by an employee of a Fortis affiliate.
October 2017 Order at *5 (emphasis in original).
U.S. Bank contends that Judge Francis "applied the wrong causation standard" and that this statement is contrary to law. It quotes Sharma v. Skaarup Ship Management Corp., 916 F.2d 820 (2d Cir. 1990) to emphasize that damages are determined at the time of breach and "based on what knowledge investors anticipated in future conditions and performance would be at the time of breach." Id. at 826. U.S. Bank argues that taking impairments "squarely tracked this legal standard." (Def. Mem. at 17.) U.S. Bank also emphasizes that "[e]vidence of the impairments taken by Fortis was thus crucial ... because the losses were incurred by Fortis before any alleged breach of contract by U.S. Bank. (Id. (emphasis in original).) Royal Park asserts that the "valuation documents have no bearing on the expert analysis." (Pl. Mem. at 24.) The parties also disagree regarding when U.S. Bank is alleged to have breached *309 or caused damages as to possible causes of the impairments. On this point, U.S. Bank claims that the earliest alleged breach is in January 2009, while Royal Park counters that it alleged breaches through 2007 and 2008. (See id. )
U.S. Bank's repeated emphasis in its prior and current arguments on "when" impairments occurred demonstrates that Magistrate Judge Francis did not clearly err in likewise emphasizing the "when" versus the "why" in his causation holding. Once again, the issue is whether Royal Park deprived U.S. Bank of key information and thereby prejudiced U.S. Bank. As Magistrate Judge Francis recognized, the possible existence of any additional Fortis Bank emails about the "why" of certain impairments does not necessarily help answer the key "when" issue. Royal Park's statistical analysis would likely not address the "when" issue.
The damages formulation from Sharma also does not obviously preclude statistical analysis. Even if Fortis Bank valued the certificates as worthless leading up to and during U.S. Banks's alleged breaches, there may be multiple causes of losses beyond the ones driving the impairments. Some of those causes may require statistical analysis. This result especially follows if Fortis Bank was unaware of U.S. Bank's alleged breaches and if those breaches occurred in earlier time periods. In those circumstances, Royal Park's experts would likely present statistical evidence to show the but-for effect on the certificates if U.S. Bank had met its alleged obligations. One example may be the impact on certificate values if certain non-conforming loans in the trusts were substituted during the financial crisis. (See Pl. Mem. at 24-25.)
Of course, as U.S. Bank notes, the essential question is whether U.S. Bank was wrongfully deprived of key information -- regardless of whether Royal Park plans to use the information it seeks. And U.S. Bank may ultimately present outside information and Fortis Bank documents to rebut Royal Park's theories. But that does not fatally undermine Magistrate Judges Francis's statement that it is "likely" that causation will be proven through statistical analysis, nor make that statement clearly erroneous or contrary to law. U.S. Bank circularly presumes that the missing valuation documents explaining the "why" of impairments would render the statistical analysis unnecessary. But the point of the prejudice inquiry is to answer precisely that question of whether the missing information is so key in light of other available evidence, some of which U.S. Bank's expert already relied upon. See Cedar Petrochems., 769 F.Supp.2d at 293. Magistrate Judge Francis was not discounting the value of U.S. Bank's proposed analysis, especially as he recognized the importance of answering the "when" inquiry. Instead, he reiterated that U.S. Bank had not demonstrated how additional missing emails potentially exist that would sufficiently prejudice U.S. Bank's argument about "when the [c]ertificates lost value." October 2017 Order at *5.
* * *
Ultimately, Royal Park bears the burden of proof to establish damages. Conceivably, failure to produce all the internal valuation documents may undermine its proof if U.S. Bank marshals other evidence showing that Fortis Bank had already written off the certificates. This debate is appropriate in connection with determinations on the merits, especially in light of this Court's recent Order dated October 30, 2018 which requires Royal Park to proceed on a loan-by-loan basis. The Court does not take lightly a party's failure to comply with discovery obligations -- even when, as here, the failure to comply was *310 due to decisions made years before the litigation when Fortis Bank assigned the certificates and claims to Royal Park.
In conclusion, the Court is not persuaded that Magistrate Judge Francis's October 2017 Order is clearly erroneous or contrary to law, and therefore accords it the substantial deference due to a magistrate judge's discovery orders. Accordingly, the Court affirms the October 2017 Order based on the pertinent findings, reasoning, and controlling authority upon which it is grounded.
IV. ORDER
For the reasons discussed above, it is hereby
ORDERED that the objection pursuant to Federal Rule of Civil Procedure 72 of defendant U.S. Bank National Association to the Order of Magistrate Judge Francis dated October 19, 2017 (the " October 2017 Order") (Dkt. Nos. 338, 339) is DENIED; and it is further
ORDERED that the October 2017 Order (Dkt. No. 332) is AFFIRMED.
SO ORDERED.

As defined by U.S. Bank, impairments "re losses required to be recorded by a financial institution ... in its quarterly and annual financial statements based on declines in the 'fair value' of the securities held for investment." (Dkt. No. 339 at 4 n.4.)

As Royal Park noted, the concept of "final impairment" documents never appeared in U.S. Bank's opening briefing for sanctions, although it did generally refer to "valuation documents." (Compare Dkt. No. 180 with Dkt. No. 302.)

Jensen v. Phillips Screw Co., 546 F.3d 59, 64 (1st Cir. 2008) (reversing sanctions granted under 28 U.S.C. Section 1927 because the lawyer multiplied "the proceedings ... unreasonably and vexatiously" in part because the court credited hearsay allegations despite "its avowed unwillingness to rely upon hearsay accounts"); Rezende v. Citigroup Glob. Markets Inc., No. 09 Civ. 9392, 2011 WL 1584607, at *27 (S.D.N.Y. Mar. 11, 2011), report and recommendation adopted in part, rejected in part, No. 09 Civ. 9392, 2011 WL 1584603 (S.D.N.Y. Apr. 27, 2011) (reversing magistrate judge's imposition of sanctions due to "fraud on the court").

Additionally, without endorsing a specific minimum standard, the evidence relied upon would meet the Sentis"indicia of reliability" standard even if the documents are not admissible, given the recipient names and other data available in the emails and documents. (See Pl. Mem. at 14.) This issue concerning documentary evidence differs greatly from the "many layers of hearsay" at issue in Sentis. 559 F.3d at 900.

Notably, even the parties' expert witnesses may rely on these documents regardless of their admissibility. See Fed. R. Evid. 703.